UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In Re:

KELLAN SANDIFER,

        Chapter 7
        Case No. 25–44058–mar
        Hon. Mark A. Randon

        Debtor(s).

_____/

MICHIGAN DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

        Plaintiff,
v.

KELLAN SANDIFER,

        Defendant.

        Adv. Pro. No. _____
        Hon. Mark A. Randon

_____/

**COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT UNDER 11 U.S.C. § 523(a)(3)(B)**

Plaintiff, Michigan Department of Health and Human Services

(Department), by and through its attorney, Assistant Attorney General

James A. Ziehmer, objects to the discharge of the debt owed by

Defendant Kellan Sandifer, pursuant to 11 U.S.C. §§ 727(b) and

523(a)(2)(A), and in support states as follows:

## JURISDICTION

1.     Pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334, this Court has jurisdiction to determine the rights of the parties as to a determination of dischargeability of a debt under 11 U.S.C. § 523(a).

2.     Venue is proper as provided by 28 U.S.C. § 1409(a).

3.     This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

4.     This is an action seeking a determination that the debt Kellan Sandifer owes to the Department is non-dischargeable pursuant to 11 U.S.C. §§ 727(b) and 523(a)(2)(A).  Fed. R. Bankr. P. 4007(c); Fed. R. Bankr. P. 7001(6).

## GENERAL ALLEGATIONS

5.     The Department incorporates ¶¶ 1-4 by reference as if fully restated.

6.     Kellan Sandifer's bankruptcy address of record shows is in Oakland County and with an address of 24621 Walden Rd E, Southfield, Michigan 48033.

7.     Sandifer filed a Chapter 7 petition on April 21, 2025.  (Case No. 25-44058-mar, ECF No. 1.)

2

8.     The deadline for filing a dischargeability complaint is August 1, 2025.  (*Id.*, ECF No. 7.)

## The Department's Statutory and Regulatory Authority

9.     The Medicaid program was created in 1965 through the enactment of Title XIX of the Social Security Act, 42 USC 1396 *et seq.* The federal regulations governing Medicaid are found in 42 C.F.R. §§ 430-456.

10.     The Department is an agency of the state of Michigan, and among other duties is the lead agency for the administration of the state of Michigan's Medicaid program pursuant to Mich. Comp. Laws. § 400.1 *et. seq.*

11.     Michigan's Medicaid program allows, in relevant part, for personal care services (Home Help) to be provided to eligible beneficiaries to enable them to live safely in the most independent setting of their choice.  Mich. Comp. Laws § 400.14(1)(p).  *See also* 42 C.F.R. § 440.167.

12.     The Department makes Home Help services available through agreements entered into between eligible beneficiaries and Home Help agencies or individual providers.  Mich. Comp. Laws

§ 400.111b(4); 42 C.F.R. § 431.107.  *See also Adult Services Manual* 135, p. 13 (available at http://www.mfia.state.mi.us/olmweb/ex/html/).

13.     Prepetition, Sandifer was the sole owner of Jewels Home Health Care Service, LLC, (JHHCS) and voluntarily enrolled JHHCS as a Home Help agency provider in October 2017.  (Ex. 1, Home Help Enrollment Agreement.)

14.     As an agency provider,[1] Sandifer agreed that "personal care services will be provided for a Michigan Medicaid Beneficiary, as authorized by the Michigan Department of [Health and] Human Services" in return for reimbursement for providing the services.  (Ex. 1, Home Help Enrollment Agreement.)

15.     But Sandifer explicitly agreed to "return any payments received from Home Help services not provided."  (Ex. 1, Home Help Provider Agreement, ¶ 5.)  *See also* Mich. Comp. Laws § 400.105(4) ("provider" includes an individual); § 400.111b(6), (8), (16) (collectively these subsections require a Medicaid "provider" to retain specific

---

[1] An "agency provider" is an approved agency with a federal taxpayer identification number that directly employs all (but not less than two) agency caregivers, not including the owner, who are providing services through the Home Help program and regularly receiving a monthly paycheck."  (Ex. 2, *Adult Services Manual Item* 136, p. 1.)  An individual provider or caregiver provides home help services directly to the beneficiary without the involvement of an agency provider.

records for 7 years and repay, return, restore, or reimburse the Department for overissued payments).

16.     And as an agency provider, Sandifer was responsible for submitting agency billing information to the Department on behalf of JHHCS.  (Ex. 2, *Adult Services Manual* 136 [December 1, 2013], p. 5.)

## MDHHS – CHAMPS ENROLLMENT-BASED DEBT

17.     Sandifer agreed in writing that, as a condition of receiving Medicaid reimbursement, he would "be subject to a criminal history screening and may not qualify to be a home help provider."  (Ex. 1, Home Help Provider Agreement, ¶ 10.)  *See* 42 C.F.R. §§ 431.107, 455.106 and 455.434.

18.     As a provider, Sandifer also agreed to comply with Mich. Comp. Laws §§ 400.111b(18) and 400.111a(1), which required Sandifer to comply with the Department's policies and procedures.

19.     Consistent with these provisions, the Department informed Home Help agencies and providers via MSA Bulletin 15-13 that, effective June 1, 2015, "[a]gency owners and all agency employees that either provide Home Help services or have access to a client's home are subject to criminal history screenings[,]" which would be implemented

by all direct caregivers employed by a Home Help agency enrolling in the Department's Community Health Automated Processing System (CHAMPS).  (Ex. 3, MSA 15-13.)

20.    Between December 1, 2018, and November 30, 2022 (the "Over-Issuance Period"), Sandifer, through JHHCS, failed to ensure that all direct caregivers employed by JHHCS were registered with CHAMPS or else failed to identify any caregiver for the claims that were submitted.  (Ex. 4, Final Notice of Recovery, p. 4.)

21.    But Sandifer, on behalf of JHHCS, intentionally continued to request Medicaid payments for Home Help services provided by his agency's direct caregivers without first verifying that his direct caregivers were registered with CHAMPS.

22.    Because Sandifer, through JHHCS, knowingly failed to ensure that his direct caregivers were enrolled in CHAMPS, the Department over issued $78,312.20 in Medicaid payments that Sandifer, as sole owner of JHHCS, was ineligible to receive.

## MDHHS – DEBT FOR SERVICES NOT PROVIDED TO BENEFICIARY

23.     In addition to the $78,312.20 debt, Sandifer, through

JHHCS, received $4,056.98 in Medicaid payments for services allegedly

provided when beneficiaries were unavailable because they were

receiving in-patient care at a medical facility, incarcerated, or deceased.

(Ex. 4, Final Notice of Recover , p. 4.)

24.     And Sandifer, through JHHCS, received $480.07 in

overpayments issued because Sandifer, through JHHCS, billed as an

agency rather than an individual when the agency did not meet the

standards to be an agency, because it did not have two or more

caregivers, not including the owner, providing home help services.  (*Id*.)

25.     Home Help agencies cannot bill for, and receive Medicaid

reimbursement, for services that a direct caregiver did not actually

provide to the beneficiary because the beneficiary was unavailable due

to the beneficiary being admitted to a medical facility, incarcerated, or

dead.  (Ex. 5, *Adult Services Manual* 166, p. 2.)  *See also* Mich. Comp.

Laws § 400.111e(3)(b); and Mich. Comp. Laws § 400.607(1).

26.     An agency provider commits an intentional program violation

(i.e., fraud) when the provider "intentionally makes a false or misleading

statement, hides or misrepresents/withholds facts to receive or to continue receiving benefits." (Ex. 5, *Adult Services Manual* 166, p. 1.)

27.    Sandifer, however, knowingly failed to notify the Department when the beneficiaries were receiving in-patient care, incarcerated, or dead, and intentionally, or with reckless disregard, continued to accept Home Help payments for those periods when JHHCS was not eligible for payments because the direct caregivers employed by Sandifer and JHHCS could not have provided care while the beneficiaries were unavailable.

28.    Since the direct caregivers JHHCS employed could not have provided care to a beneficiary that was also receiving in-patient care, Sandifer repeatedly and intentionally, or with reckless disregard, misrepresented JHHCS's eligibility for Home Help payments because Home Help services cannot be paid while a beneficiary is unavailable.

29.    Based on Sandifer's repeated and knowing misrepresentations, the Department issued Sandifer, through JHHCS, $4,537.05 in Home Help payments that he was not eligible to receive because the beneficiaries were unavailable, and he was billing at the incorrect rate.

## PREPETITION ADMINISTRATIVE REVIEW
## AND LITIGATION

30.    Sandifer and JHHCS did not request an administrative hearing to dispute the debt despite being advised of their right to an administrative hearing.  (Ex. 4, Final Notice of Recovery.)

31.    Because JHHCS failed to repay consistent with the administrative decision, the Department commenced a state court action to enter the administrative judgment against JHHCS and Sandifer, jointly and severally.  (Ingham County Cir. Ct., Case No. 24-563-CZ).

32.    The state court entered default judgment against Sandifer on October 4, 2024.  (Ex. 6, Default J., Ingham County Cir. Ct., Case No. 24-563-CZ).

## COUNT I:  11 U.S.C. § 523(a)(2)(A)

33.    The Department incorporates by reference ¶¶ 1-32 as if fully restated.

34.    The Department may obtain a determination of dischargeability regarding a kind of debt specified in § 523(a)(2)(A). Fed. R. Bankr. P. 4007(b).

35.     Sandifer was the sole owner and responsible person for seeking Medicaid Home Help reimbursements by JHHCS.  (Ex. 1, Provider Agreement, ¶ 5.)  *See also* Mich. Comp. Laws § 400.111b(24) (provider agrees to satisfy all previous adjudicated liabilities under Medicaid program); and Mich. Comp. Laws § 400.111b(27)(d) (employer and employee agree to joint and several liability).

36.     Sandifer repeatedly intentionally and knowingly misrepresented to the Department that services were provided to beneficiaries by unknown individuals, or while the beneficiaries were unavailable, as well as billing at the wrong rate.  His misrepresentations resulted in his and JHHCS receiving Home Help payments from Michigan's Medicaid program in excess of what they were actually entitled to receive.

37.     Additionally, as articulated in the state court proceeding through the complaint and exhibits, Sandifer used JHHCS as a mere instrumentality to pay for his personal living expenses, including gambling.  (Ex. 7, Complaint, ¶¶ 43-49.)

38.     As a matter of law, Home Help services cannot be paid for services not provided, and even if provided, they cannot be paid for

those direct caregivers employed by an agency that were not enrolled in CHAMPS. 42 C.F.R. §§ 455.106 and 455.434 (provider disclosures and criminal background checks); Mich. Comp. Laws. 400.111a(1) (requiring providers to comply with the Department's policies and procedures).

39. When Sandifer requested Medicaid reimbursements on behalf of JHHCS, he intentionally, or with reckless disregard as to the truth, and repeatedly misrepresented to the Department that his employees were registered with CHAMPS and/or providing services to beneficiaries.

40. And Sandifer, through JHHCS, intentionally and knowingly, or with reckless disregard, misrepresented to the Department that Home Help services were provided to several beneficiaries that were admitted to a medical facility for in-patient care and thus unavailable for Home Help services.

41. Home Help services cannot be paid when the beneficiary is unavailable. *Adult Services Manual* 135, p. 2; *Adult Services Manual* 166, p. 2. *See also Adult Services Manual* 165, p. 2 ("Individual caregivers and agency providers must bill for hours and services delivered to the client that have been approved by the adult services

worker.  Individual caregivers and agency providers are responsible for refunding overpayments resulting from an inaccurate submission of hours.").

42.    Sandifer intentionally, or with reckless disregard as to the truth, repeatedly misrepresented to the Department that JHHCS was eligible for Medicaid Home Help payments by accepting reimbursements knowing that either he was billing for services never provided or some of his employed direct caregivers were not registered with CHAMPS.

43.    Sandifer knew or should have known that JHHCS was not eligible for Home Help reimbursements because Sandifer agreed in writing to "report any changes relative to the beneficiary, including but not limited to hospitalizations, nursing home stays or discontinuation of services[,]" and to return any payments for services not provided. (Ex. 1, Home Help Provider Agreements, ¶¶ 5, 12.)  *See also* Mich. Comp. Laws § 400.111b(24).

44.    Because of Sandifer's intentional and knowing misrepresentations, the Department overpaid JHHCS Medicaid

payments that it was ineligible to receive.  As the sole owner of JHHCS, Sandifer personally benefited from the overpayments.

45.    Had Sandifer not misrepresented JHHCS's eligibility for Home Help payments, the Department would not have overpaid JHHCS the $82,846.41 in Medicaid payments.

46.    The Department justifiably relied on Sandifer's intentional and false misrepresentations regarding JHHCS's eligibility for Home Help payments.

47.    Based on the Department's justifiable reliance, it provided Sandifer and JHHCS with Home Help program payments that each was otherwise not entitled to receive.

48.    Sandifer, as the sole owner of JHHCS, is personally liable for the over issuance because of his active participation in misrepresenting JHHCS's eligibility for Home Help payments.  *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 444 N.W.2d 210, 213 (Mich. Ct. App. 1989).

49.    Similar to other cases, Sandifer's debt to the Department is non-dischargeable because Sandifer intentionally used JHHCS to induce the Department to overpay $82,846.41 for Medicaid payments neither was eligible to receive.  *See Brady v. McAllister* (*In re Brady*),

101 F.3d 1165, 1172 (6th Cir. 1996) (a debtor who fraudulently induces a loan to a corporation that he controls may be liable for purposes of § 523[a][2][A]); *Cash Am. Fin. Servs., Inc. v. Fox* (*In re Fox*), 370 B.R. 104, 113 (B.A.P. 6th Cir .2007) (corporate officer may be personally liable for corporation's tort if he was personally involved in tort's commission); *In re Jones*, 585 B.R. 465, 504 (Bankr. E.D. Tenn. 2018) (debtor held personally liable for corporate debt because he was sole shareholder and made livelihood from corporation).

50.    Sandifer's intentional actions caused him, through JHHCS, to obtain money or benefits from the Department through false pretenses, false representations, and actual fraud contrary to 11 U.S.C. § 523(a)(2)(A).

51.    The administrative decision and post-petition state-court judgment confirm the Department's determination that the false, inaccurate, and fraudulent nature of Sandifer's misrepresentations resulted in the prepetition overpayment of Medicaid payments in the total amount of $82,846.81.

52.     As a direct result of this fraud, the Department filed a complaint in State court and obtained treble damages for the amount sought.  The treble damages are also non-dischargeable.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, the Michigan Department of Health and Human Services requests that this Court enter an Order as follows:

A.     Enter an order and judgment determining that the debt owed by Defendant Kellan Sandifer to the Michigan Department of Health and Human Services in the amount of $258,238.50 is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A); and

B.     Any other further relief as this Court deems appropriate.

Respectfully submitted,

/s/ *James A. Ziehmer*
James A. Ziehmer (P75377)
Assistant Attorney General
Attorney for Michigan Dep't of
Health and Human Services
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335–7584
Ziehmerj@michigan.gov

Dated:  June 17, 2025

# Exhibit 1


| Application ID | SSO ID | SSO First Name | SSO Last Name | NPI | Provider Name | Submission Date |
|---|---|---|---|---|---|---|
| ▓▓▓▓▓▓ | sandiferk2017 | Kellan | Sandifer | | Jewels Home Health Care Service, LLC | 10/12/2017 |

**Terms and Conditions**

Terms and Conditions Atypical Enrollment

### Participation as Home Help Provider

1.As an individual provider of Home Help services, I agree that the Medicaid beneficiary is considered the employer. I am not employed by the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services (DHS), or the State of Michigan.

2.As a Home Help provider agency, I agree that the agency contract is with the Medicaid beneficiary. The agency contract is not with the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services or the State of Michigan.

3.I agree that personal care services will be provided for a Michigan Medicaid beneficiary, as authorized by the Michigan Department of Human Services (DHS) according to the DHS Adult Services Comprehensive Assessment.

4.Under Section 3504 of the Internal Revenue Code, I agree to accept the Michigan Department Of Health and Human Services (MDHHS) as the acting agent of the beneficiary for the deduction of withholding of FICA taxes. I understand that federal, state and city taxes are not withheld. I further agree to accept payments issued by MDHHS as payment in full and not to seek or accept additional payments from the beneficiary or any other source.

5.I agree to return any payments received for Home Help services not provided. I understand that accepting payment for services I did not provide is fraudulent and could result in criminal charges.

6.I understand that the Home Help program is funded by Medicaid and payments will not be approved by the Department if the beneficiary's Medicaid eligibility is inactive.

7.In order to receive payment, I agree to keep and submit to MDHHS, DHS or their designee, any and all records necessary to disclose the extent of services provided to the beneficiary.

8.Upon request, I agree to provide MDHHS, DHS or their designee, any information regarding services or purchases for which payment was made.

9.Upon request, I agree to provide MDHHS, DHS or their designee, any business transaction information as specified by 42 CFR 455.105.

10.I understand I will be subject to a criminal history screening and may not qualify to be a home help provider.

11.I agree to cooperate with MDHHS, DHS or their designee, regarding any audits, investigations or inquiries related to Home Help services provided.


12.I agree to report any changes relative to the beneficiary including but not limited to hospitalizations, nursing home stays or discontinuation of services.

13.I agree to comply with the privacy, security and confidentiality provisions of all applicable laws governing the use and disclosure of protected health information (PHI), including the privacy regulations adopted by the U.S. Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and Public Acts 104-191 (45 CFR parts 106 and 164, Subparts A, C, and E).

14.I agree to comply with the provisions of 42 CFR 431.107 and Act No. 280 of the Public Acts of 1939, as amended, which state the conditions and requirements under which participation in the Medical Assistance Program is allowed.

Participation as Non-Emergency Transportation Provider

Definitions:

Confidential Rider Information: Includes, but is not limited to, the rider's medical record, any information provided by a health care provider, any other personally identifying information, and any information about the time of travel, destination, or pick up location.
Department means the Michigan Department of Health and Human Services.
Driver means an individual providing Non-Emergency Medical Transportation.
Rider means the individual being transported by driver.
Service means the provision by driver of Non-Emergency Medical Transportation for rider.

Terms:

Driver agrees to abide by the following terms and conditions:

1.To act in a professional manner at all times while providing services.

2.To never make comments that are sexually explicit in nature, solicit sexual favors, or engage in sexual activity with ride.

3.To never solicit or accept controlled substances, alcohol, or medication from rider.

4.To never solicit or accept money from riders.

5.To never use alcohol, narcotics, or controlled substances, or be under their influence, while providing services to riders. Prescribed medications can be used by a driver as long as his or her duties can still be performed in a safe manner and driver has written documentation from a treating physician that the medication does not impact the ability to drive.

6.To never eat or consume any beverage while operating the vehicle or while involved in rider assistance.

7.To never smoke in the vehicle when rider is present. For purposes of this agreement, "smoke" includes electronic


cigarettes and any other product or device which emits vapor, smoke, or any similar gaseous matter of any kind.

8. To never wear any type of headphone while providing the service.

9. To be responsible for rider's personal items.

10. To provide, as appropriate to the needs of the rider, assistance with exiting the vehicle, to open and close vehicle doors when passengers enter or exit the vehicle, and to provide assistance as necessary to or from the main door of the place of destination.

11. To properly identify and announce their presence at the entrance of the building at the specified pick-up location if a curbside pick-up is not apparent, or with attending facility staff.

12. To assist the passengers in the process of being seated, including the fastening of the seat belt, when necessitated by the rider's condition.

13. To confirm, prior to allowing any vehicle to proceed, that all passengers are properly secured in their seat belts, car seats, and, when applicable, that wheelchairs and passengers who use wheelchairs are properly secured (Exception: Only a passenger who has a letter, carried on his/her person and signed by the passenger's physician, stating that the passenger's medical condition prevents the rider from using a seat belt, may be transported without a fastened seat belt and then only as allowed by state law).

14. To provide an appropriate level of assistance to passengers, when requested, or when necessitated by a passenger's condition.

15. To provide support and direction to passengers. Such assistance shall also apply to the movement of wheelchairs and mobility-limited persons as they enter or exit the vehicle using the wheelchair lift/ramp, as applicable. Such assistance shall also include stowage by the driver of mobility aids and folding wheelchairs.

16. To act in a professional manner at all times while providing services.

17. To be clean and maintain a neat appearance at all times.

18. To be polite and courteous to riders; riders shall be treated with respect and in a culturally appropriate manner when receiving transportation services. The Manager should notify the volunteer driver of any known cultural issues significant to providing transportation services.

19. To limit review of any confidential rider information to the minimum information necessary to provide the service.

20. To only use or record confidential rider information as necessary to provide the Department information necessary for the administration of the program (i.e. mileage reimbursement, if applicable).



21. To not to retain any original or copy of any document rider shares with you for purposes of transport.

22. To not to retain any original or copy of any document that may be provided by a health care provider to driver. Driver agrees to ensure that such documentation leaves with rider.

23. To report any breach of the terms of this user agreement to the Department. This includes, but is not limited to, accidental retention of medical record or other confidential rider information.

24. To return to the Department, as soon as possible, but in no event later than 3 business days after discovery, any confidential rider information retained left with driver after completing transport of the rider.

25. To never discuss, write, or share in any other format any information specific to a rider, except as necessary to communicate with the Department or with a health care provider or other staff at a facility rider is being transported to.

26. Not input or include any confidential rider information in any computer system of any kind, except as approved by the Department. This includes personal email accounts, file transfer systems, note applications, and any other electronic system of recording data not expressly approved for use by the Department.

27. Comply with any other agreements driver has entered into with respect to this program.

28. Respect the rider's privacy by not asking for more information about the individual's condition, reason for visit, or other personal information, while providing transport services. If the rider chooses to voluntarily share this information, it is subject to the same protections described above regarding protecting rider information.

☑ By checking this, I certify that I have read and that I agree and accept the enrollment conditions in the Medical Assistance Provider Enrollment & Trading Partner Agreement.

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 11:17:04    Page 20 of 95

# Michigan Department of Health and Human Services

## Print Terms and Conditions Report

Modification Submission



| Provider ID | SSO ID | SSO First Name | SSO Last Name | NPI | Provider Name | Submission Date |
|---|---|---|---|---|---|---|
| ▬▬▬ | sandiferk2017 | Kellan | Sandifer | | Jewels Home Health Care Service, LLC | 11/02/2017 |

**Terms and Conditions**

Terms and Conditions Atypical Enrollment

### Participation as Home Help Provider

1. As an individual provider of Home Help services, I agree that the Medicaid beneficiary is considered the employer. I am not employed by the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services (DHS), or the State of Michigan.

2. As a Home Help provider agency, I agree that the agency contract is with the Medicaid beneficiary. The agency contract is not with the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services or the State of Michigan.

3. I agree that personal care services will be provided for a Michigan Medicaid beneficiary, as authorized by the Michigan Department of Human Services (DHS) according to the DHS Adult Services Comprehensive Assessment.

4. Under Section 3504 of the Internal Revenue Code, I agree to accept the Michigan Department Of Health and Human Services (MDHHS) as the acting agent of the beneficiary for the deduction of withholding of FICA taxes. I understand that federal, state and city taxes are not withheld. I further agree to accept payments issued by MDHHS as payment in full and not to seek or accept additional payments from the beneficiary or any other source.

5. I agree to return any payments received for Home Help services not provided. I understand that accepting payment for services I did not provide is fraudulent and could result in criminal charges.

6. I understand that the Home Help program is funded by Medicaid and payments will not be approved by the Department if the beneficiary's Medicaid eligibility is inactive.

7. In order to receive payment, I agree to keep and submit to MDHHS, DHS or their designee, any and all records necessary to disclose the extent of services provided to the beneficiary.

8. Upon request, I agree to provide MDHHS, DHS or their designee, any information regarding services or purchases for which payment was made.

9. Upon request, I agree to provide MDHHS, DHS or their designee, any business transaction information as specified by 42 CFR 455.105.

10. I understand I will be subject to a criminal history screening and may not qualify to be a home help provider.

11. I agree to cooperate with MDHHS, DHS or their designee, regarding any audits, investigations or inquiries related to Home Help services provided.



12.I agree to report any changes relative to the beneficiary including but not limited to hospitalizations, nursing home stays or discontinuation of services.

13.I agree to comply with the privacy, security and confidentiality provisions of all applicable laws governing the use and disclosure of protected health information (PHI), including the privacy regulations adopted by the U.S. Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and Public Acts 104-191 (45 CFR parts 106 and 164, Subparts A, C, and E).

14.I agree to comply with the provisions of 42 CFR 431.107 and Act No. 280 of the Public Acts of 1939, as amended, which state the conditions and requirements under which participation in the Medical Assistance Program is allowed.

Participation as Non-Emergency Transportation Provider

Definitions:

Confidential Rider Information: Includes, but is not limited to, the rider's medical record, any information provided by a health care provider, any other personally identifying information, and any information about the time of travel, destination, or pick up location.
Department means the Michigan Department of Health and Human Services.
Driver means an individual providing Non-Emergency Medical Transportation.
Rider means the individual being transported by driver.
Service means the provision by driver of Non-Emergency Medical Transportation for rider.

Terms:

Driver agrees to abide by the following terms and conditions:

1.To act in a professional manner at all times while providing services.

2.To never make comments that are sexually explicit in nature, solicit sexual favors, or engage in sexual activity with ride.

3.To never solicit or accept controlled substances, alcohol, or medication from rider.

4.To never solicit or accept money from riders.

5.To never use alcohol, narcotics, or controlled substances, or be under their influence, while providing services to riders. Prescribed medications can be used by a driver as long as his or her duties can still be performed in a safe manner and driver has written documentation from a treating physician that the medication does not impact the ability to drive.

6.To never eat or consume any beverage while operating the vehicle or while involved in rider assistance.

7.To never smoke in the vehicle when rider is present. For purposes of this agreement, "smoke" includes electronic


cigarettes and any other product or device which emits vapor, smoke, or any similar gaseous matter of any kind.

8. To never wear any type of headphone while providing the service.

9. To be responsible for rider's personal items.

10. To provide, as appropriate to the needs of the rider, assistance with exiting the vehicle, to open and close vehicle doors when passengers enter or exit the vehicle, and to provide assistance as necessary to or from the main door of the place of destination.

11. To properly identify and announce their presence at the entrance of the building at the specified pick-up location if a curbside pick-up is not apparent, or with attending facility staff.

12. To assist the passengers in the process of being seated, including the fastening of the seat belt, when necessitated by the rider's condition.

13. To confirm, prior to allowing any vehicle to proceed, that all passengers are properly secured in their seat belts, car seats, and, when applicable, that wheelchairs and passengers who use wheelchairs are properly secured (Exception: Only a passenger who has a letter, carried on his/her person and signed by the passenger's physician, stating that the passenger's medical condition prevents the rider from using a seat belt, may be transported without a fastened seat belt and then only as allowed by state law).

14. To provide an appropriate level of assistance to passengers, when requested, or when necessitated by a passenger's condition.

15. To provide support and direction to passengers. Such assistance shall also apply to the movement of wheelchairs and mobility-limited persons as they enter or exit the vehicle using the wheelchair lift/ramp, as applicable. Such assistance shall also include stowage by the driver of mobility aids and folding wheelchairs.

16. To act in a professional manner at all times while providing services.

17. To be clean and maintain a neat appearance at all times.

18. To be polite and courteous to riders; riders shall be treated with respect and in a culturally appropriate manner when receiving transportation services. The Manager should notify the volunteer driver of any known cultural issues significant to providing transportation services.

19. To limit review of any confidential rider information to the minimum information necessary to provide the service.

20. To only use or record confidential rider information as necessary to provide the Department information necessary for the administration of the program (i.e. mileage reimbursement, if applicable).



21. To not to retain any original or copy of any document rider shares with you for purposes of transport.

22. To not to retain any original or copy of any document that may be provided by a health care provider to driver. Driver agrees to ensure that such documentation leaves with rider.

23. To report any breach of the terms of this user agreement to the Department. This includes, but is not limited to, accidental retention of medical record or other confidential rider information.

24. To return to the Department, as soon as possible, but in no event later than 3 business days after discovery, any confidential rider information retained left with driver after completing transport of the rider.

25. To never discuss, write, or share in any other format any information specific to a rider, except as necessary to communicate with the Department or with a health care provider or other staff at a facility rider is being transported to.

26. Not input or include any confidential rider information in any computer system of any kind, except as approved by the Department. This includes personal email accounts, file transfer systems, note applications, and any other electronic system of recording data not expressly approved for use by the Department.

27. Comply with any other agreements driver has entered into with respect to this program.

28. Respect the rider's privacy by not asking for more information about the individual's condition, reason for visit, or other personal information, while providing transport services. If the rider chooses to voluntarily share this information, it is subject to the same protections described above regarding protecting rider information.

☑ By checking this, I certify that I have read and that I agree and accept the enrollment conditions in the Medical Assistance Provider Enrollment & Trading Partner Agreement.



| Provider ID | SSO ID | SSO First Name | SSO Last Name | NPI | Provider Name | Submission Date |
|---|---|---|---|---|---|---|
| ▮▮▮ | sandiferk2017 | Kellan | Sandifer | | Jewels Home Health Care Service, LLC | 06/04/2019 |
| | | | Terms and Conditions | | | |

Terms and Conditions Atypical Enrollment

Participation as Home Help Provider

1.As an individual provider of Home Help services, I agree that the Medicaid beneficiary is considered the employer. I am not employed by the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services (DHS), or the State of Michigan.

2.As a Home Help provider agency, I agree that the agency contract is with the Medicaid beneficiary. The agency contract is not with the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services or the State of Michigan.

3.I agree that personal care services will be provided for a Michigan Medicaid beneficiary, as authorized by the Michigan Department of Human Services (DHS) according to the DHS Adult Services Comprehensive Assessment.

4.Under Section 3504 of the Internal Revenue Code, I agree to accept the Michigan Department Of Health and Human Services (MDHHS) as the acting agent of the beneficiary for the deduction of withholding of FICA taxes. I understand that federal, state and city taxes are not withheld. I further agree to accept payments issued by MDHHS as payment in full and not to seek or accept additional payments from the beneficiary or any other source.

5.I agree to return any payments received for Home Help services not provided. I understand that accepting payment for services I did not provide is fraudulent and could result in criminal charges.

6.I understand that the Home Help program is funded by Medicaid and payments will not be approved by the Department if the beneficiary's Medicaid eligibility is inactive.

7.In order to receive payment, I agree to keep and submit to MDHHS, DHS or their designee, any and all records necessary to disclose the extent of services provided to the beneficiary.

8.Upon request, I agree to provide MDHHS, DHS or their designee, any information regarding services or purchases for which payment was made.

9.Upon request, I agree to provide MDHHS, DHS or their designee, any business transaction information as specified by 42 CFR 455.105.

10.I understand I will be subject to a criminal history screening and may not qualify to be a home help provider.

11.I agree to cooperate with MDHHS, DHS or their designee, regarding any audits, investigations or inquiries related to Home Help services provided.


12.I agree to report any changes relative to the beneficiary including but not limited to hospitalizations, nursing home stays or discontinuation of services.

13.I agree to comply with the privacy, security and confidentiality provisions of all applicable laws governing the use and disclosure of protected health information (PHI), including the privacy regulations adopted by the U.S. Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and Public Acts 104-191 (45 CFR parts 106 and 164, Subparts A, C, and E).

14.I agree to comply with the provisions of 42 CFR 431.107 and Act No. 280 of the Public Acts of 1939, as amended, which state the conditions and requirements under which participation in the Medical Assistance Program is allowed.

Participation as Non-Emergency Transportation Provider

Definitions:

Confidential Rider Information: Includes, but is not limited to, the rider's medical record, any information provided by a health care provider, any other personally identifying information, and any information about the time of travel, destination, or pick up location.
Department means the Michigan Department of Health and Human Services.
Driver means an individual providing Non-Emergency Medical Transportation.
Rider means the individual being transported by driver.
Service means the provision by driver of Non-Emergency Medical Transportation for rider.

Terms:

Driver agrees to abide by the following terms and conditions:

1.To act in a professional manner at all times while providing services.

2.To never make comments that are sexually explicit in nature, solicit sexual favors, or engage in sexual activity with ride.

3.To never solicit or accept controlled substances, alcohol, or medication from rider.

4.To never solicit or accept money from riders.

5.To never use alcohol, narcotics, or controlled substances, or be under their influence, while providing services to riders. Prescribed medications can be used by a driver as long as his or her duties can still be performed in a safe manner and driver has written documentation from a treating physician that the medication does not impact the ability to drive.

6.To never eat or consume any beverage while operating the vehicle or while involved in rider assistance.

7.To never smoke in the vehicle when rider is present. For purposes of this agreement, "smoke" includes electronic


cigarettes and any other product or device which emits vapor, smoke, or any similar gaseous matter of any kind.

8. To never wear any type of headphone while providing the service.

9. To be responsible for rider's personal items.

10. To provide, as appropriate to the needs of the rider, assistance with exiting the vehicle, to open and close vehicle doors when passengers enter or exit the vehicle, and to provide assistance as necessary to or from the main door of the place of destination.

11. To properly identify and announce their presence at the entrance of the building at the specified pick-up location if a curbside pick-up is not apparent, or with attending facility staff.

12. To assist the passengers in the process of being seated, including the fastening of the seat belt, when necessitated by the rider's condition.

13. To confirm, prior to allowing any vehicle to proceed, that all passengers are properly secured in their seat belts, car seats, and, when applicable, that wheelchairs and passengers who use wheelchairs are properly secured (Exception: Only a passenger who has a letter, carried on his/her person and signed by the passenger's physician, stating that the passenger's medical condition prevents the rider from using a seat belt, may be transported without a fastened seat belt and then only as allowed by state law).

14. To provide an appropriate level of assistance to passengers, when requested, or when necessitated by a passenger's condition.

15. To provide support and direction to passengers. Such assistance shall also apply to the movement of wheelchairs and mobility-limited persons as they enter or exit the vehicle using the wheelchair lift/ramp, as applicable. Such assistance shall also include stowage by the driver of mobility aids and folding wheelchairs.

16. To act in a professional manner at all times while providing services.

17. To be clean and maintain a neat appearance at all times.

18. To be polite and courteous to riders; riders shall be treated with respect and in a culturally appropriate manner when receiving transportation services. The Manager should notify the volunteer driver of any known cultural issues significant to providing transportation services.

19. To limit review of any confidential rider information to the minimum information necessary to provide the service.

20. To only use or record confidential rider information as necessary to provide the Department information necessary for the administration of the program (i.e. mileage reimbursement, if applicable).

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 11:17:04    Page 27 of 95



21.To not to retain any original or copy of any document rider shares with you for purposes of transport.

22.To not to retain any original or copy of any document that may be provided by a health care provider to driver. Driver agrees to ensure that such documentation leaves with rider.

23.To report any breach of the terms of this user agreement to the Department. This includes, but is not limited to, accidental retention of medical record or other confidential rider information.

24.To return to the Department, as soon as possible, but in no event later than 3 business days after discovery, any confidential rider information retained left with driver after completing transport of the rider.

25.To never discuss, write, or share in any other format any information specific to a rider, except as necessary to communicate with the Department or with a health care provider or other staff at a facility rider is being transported to.

26.Not input or include any confidential rider information in any computer system of any kind, except as approved by the Department. This includes personal email accounts, file transfer systems, note applications, and any other electronic system of recording data not expressly approved for use by the Department.

27.Comply with any other agreements driver has entered into with respect to this program.

28.Respect the rider's privacy by not asking for more information about the individual's condition, reason for visit, or other personal information, while providing transport services. If the rider chooses to voluntarily share this information, it is subject to the same protections described above regarding protecting rider information.

☑By checking this, I certify that I have read and that I agree and accept the enrollment conditions in the Medical Assistance Provider Enrollment & Trading Partner Agreement.

 
| Provider ID | SSO ID | SSO First Name | SSO Last Name | NPI | Provider Name | Submission Date |
|---|---|---|---|---|---|---|
| ▓▓▓▓ | sandiferk2017 | Kellan | Sandifer | | Jewels Home Health Care Service, LLC | 06/06/2019 |

**Terms and Conditions**

Terms and Conditions Atypical Enrollment

### Participation as Home Help Provider

1. As an individual provider of Home Help services, I agree that the Medicaid beneficiary is considered the employer. I am not employed by the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services (DHS), or the State of Michigan.

2. As a Home Help provider agency, I agree that the agency contract is with the Medicaid beneficiary. The agency contract is not with the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services or the State of Michigan.

3. I agree that personal care services will be provided for a Michigan Medicaid beneficiary, as authorized by the Michigan Department of Human Services (DHS) according to the DHS Adult Services Comprehensive Assessment.

4. Under Section 3504 of the Internal Revenue Code, I agree to accept the Michigan Department Of Health and Human Services (MDHHS) as the acting agent of the beneficiary for the deduction of withholding of FICA taxes. I understand that federal, state and city taxes are not withheld. I further agree to accept payments issued by MDHHS as payment in full and not to seek or accept additional payments from the beneficiary or any other source.

5. I agree to return any payments received for Home Help services not provided. I understand that accepting payment for services I did not provide is fraudulent and could result in criminal charges.

6. I understand that the Home Help program is funded by Medicaid and payments will not be approved by the Department if the beneficiary's Medicaid eligibility is inactive.

7. In order to receive payment, I agree to keep and submit to MDHHS, DHS or their designee, any and all records necessary to disclose the extent of services provided to the beneficiary.

8. Upon request, I agree to provide MDHHS, DHS or their designee, any information regarding services or purchases for which payment was made.

9. Upon request, I agree to provide MDHHS, DHS or their designee, any business transaction information as specified by 42 CFR 455.105.

10. I understand I will be subject to a criminal history screening and may not qualify to be a home help provider.

11. I agree to cooperate with MDHHS, DHS or their designee, regarding any audits, investigations or inquiries related to Home Help services provided.


12.I agree to report any changes relative to the beneficiary including but not limited to hospitalizations, nursing home stays or discontinuation of services.

13.I agree to comply with the privacy, security and confidentiality provisions of all applicable laws governing the use and disclosure of protected health information (PHI), including the privacy regulations adopted by the U.S. Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and Public Acts 104-191 (45 CFR parts 106 and 164, Subparts A, C, and E).

14.I agree to comply with the provisions of 42 CFR 431.107 and Act No. 280 of the Public Acts of 1939, as amended, which state the conditions and requirements under which participation in the Medical Assistance Program is allowed.

Participation as Non-Emergency Transportation Provider

Definitions:

Confidential Rider Information: Includes, but is not limited to, the rider's medical record, any information provided by a health care provider, any other personally identifying information, and any information about the time of travel, destination, or pick up location.
Department means the Michigan Department of Health and Human Services.
Driver means an individual providing Non-Emergency Medical Transportation.
Rider means the individual being transported by driver.
Service means the provision by driver of Non-Emergency Medical Transportation for rider.

Terms:

Driver agrees to abide by the following terms and conditions:

1.To act in a professional manner at all times while providing services.

2.To never make comments that are sexually explicit in nature, solicit sexual favors, or engage in sexual activity with ride.

3.To never solicit or accept controlled substances, alcohol, or medication from rider.

4.To never solicit or accept money from riders.

5.To never use alcohol, narcotics, or controlled substances, or be under their influence, while providing services to riders. Prescribed medications can be used by a driver as long as his or her duties can still be performed in a safe manner and driver has written documentation from a treating physician that the medication does not impact the ability to drive.

6.To never eat or consume any beverage while operating the vehicle or while involved in rider assistance.

7.To never smoke in the vehicle when rider is present. For purposes of this agreement, "smoke" includes electronic


cigarettes and any other product or device which emits vapor, smoke, or any similar gaseous matter of any kind.

8. To never wear any type of headphone while providing the service.

9. To be responsible for rider's personal items.

10. To provide, as appropriate to the needs of the rider, assistance with exiting the vehicle, to open and close vehicle doors when passengers enter or exit the vehicle, and to provide assistance as necessary to or from the main door of the place of destination.

11. To properly identify and announce their presence at the entrance of the building at the specified pick-up location if a curbside pick-up is not apparent, or with attending facility staff.

12. To assist the passengers in the process of being seated, including the fastening of the seat belt, when necessitated by the rider's condition.

13. To confirm, prior to allowing any vehicle to proceed, that all passengers are properly secured in their seat belts, car seats, and, when applicable, that wheelchairs and passengers who use wheelchairs are properly secured (Exception: Only a passenger who has a letter, carried on his/her person and signed by the passenger's physician, stating that the passenger's medical condition prevents the rider from using a seat belt, may be transported without a fastened seat belt and then only as allowed by state law).

14. To provide an appropriate level of assistance to passengers, when requested, or when necessitated by a passenger's condition.

15. To provide support and direction to passengers. Such assistance shall also apply to the movement of wheelchairs and mobility-limited persons as they enter or exit the vehicle using the wheelchair lift/ramp, as applicable. Such assistance shall also include stowage by the driver of mobility aids and folding wheelchairs.

16. To act in a professional manner at all times while providing services.

17. To be clean and maintain a neat appearance at all times.

18. To be polite and courteous to riders; riders shall be treated with respect and in a culturally appropriate manner when receiving transportation services. The Manager should notify the volunteer driver of any known cultural issues significant to providing transportation services.

19. To limit review of any confidential rider information to the minimum information necessary to provide the service.

20. To only use or record confidential rider information as necessary to provide the Department information necessary for the administration of the program (i.e. mileage reimbursement, if applicable).



21. To not to retain any original or copy of any document rider shares with you for purposes of transport.

22. To not to retain any original or copy of any document that may be provided by a health care provider to driver. Driver agrees to ensure that such documentation leaves with rider.

23. To report any breach of the terms of this user agreement to the Department. This includes, but is not limited to, accidental retention of medical record or other confidential rider information.

24. To return to the Department, as soon as possible, but in no event later than 3 business days after discovery, any confidential rider information retained left with driver after completing transport of the rider.

25. To never discuss, write, or share in any other format any information specific to a rider, except as necessary to communicate with the Department or with a health care provider or other staff at a facility rider is being transported to.

26. Not input or include any confidential rider information in any computer system of any kind, except as approved by the Department. This includes personal email accounts, file transfer systems, note applications, and any other electronic system of recording data not expressly approved for use by the Department.

27. Comply with any other agreements driver has entered into with respect to this program.

28. Respect the rider's privacy by not asking for more information about the individual's condition, reason for visit, or other personal information, while providing transport services. If the rider chooses to voluntarily share this information, it is subject to the same protections described above regarding protecting rider information.

☑By checking this, I certify that I have read and that I agree and accept the enrollment conditions in the Medical Assistance Provider Enrollment & Trading Partner Agreement.

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 11:17:04    Page 32 of 95



| Provider ID | SSO ID | SSO First Name | SSO Last Name | NPI | Provider Name | Submission Date |
|---|---|---|---|---|---|---|
| ▆▆▆▆ | sandiferk2017 | Kellan | Sandifer | | Jewels Home Health Care Service, LLC | 04/29/2020 |

Terms and Conditions

Terms and Conditions Atypical Enrollment

### Participation as Home Help Provider

1. As an individual provider of Home Help services, I agree that the Medicaid beneficiary is considered the employer. I am not employed by the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services (DHS), or the State of Michigan.

2. As a Home Help provider agency, I agree that the agency contract is with the Medicaid beneficiary. The agency contract is not with the Michigan Department Of Health and Human Services (MDHHS), the Department of Human Services or the State of Michigan.

3. I agree that personal care services will be provided for a Michigan Medicaid beneficiary, as authorized by the Michigan Department of Human Services (DHS) according to the DHS Adult Services Comprehensive Assessment.

4. Under Section 3504 of the Internal Revenue Code, I agree to accept the Michigan Department Of Health and Human Services (MDHHS) as the acting agent of the beneficiary for the deduction of withholding of FICA taxes. I understand that federal, state and city taxes are not withheld. I further agree to accept payments issued by MDHHS as payment in full and not to seek or accept additional payments from the beneficiary or any other source.

5. I agree to return any payments received for Home Help services not provided. I understand that accepting payment for services I did not provide is fraudulent and could result in criminal charges.

6. I understand that the Home Help program is funded by Medicaid and payments will not be approved by the Department if the beneficiary's Medicaid eligibility is inactive.

7. In order to receive payment, I agree to keep and submit to MDHHS, DHS or their designee, any and all records necessary to disclose the extent of services provided to the beneficiary.

8. Upon request, I agree to provide MDHHS, DHS or their designee, any information regarding services or purchases for which payment was made.

9. Upon request, I agree to provide MDHHS, DHS or their designee, any business transaction information as specified by 42 CFR 455.105.

10. I understand I will be subject to a criminal history screening and may not qualify to be a home help provider.

11. I agree to cooperate with MDHHS, DHS or their designee, regarding any audits, investigations or inquiries related to Home Help services provided.


12.I agree to report any changes relative to the beneficiary including but not limited to hospitalizations, nursing home stays or discontinuation of services.

13.I agree to comply with the privacy, security and confidentiality provisions of all applicable laws governing the use and disclosure of protected health information (PHI), including the privacy regulations adopted by the U.S. Department of Health and Human Services under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and Public Acts 104-191 (45 CFR parts 106 and 164, Subparts A, C, and E).

14.I agree to comply with the provisions of 42 CFR 431.107 and Act No. 280 of the Public Acts of 1939, as amended, which state the conditions and requirements under which participation in the Medical Assistance Program is allowed.

Participation as Non-Emergency Transportation Provider

Definitions:

Confidential Rider Information: Includes, but is not limited to, the rider's medical record, any information provided by a health care provider, any other personally identifying information, and any information about the time of travel, destination, or pick up location.
Department means the Michigan Department of Health and Human Services.
Driver means an individual providing Non-Emergency Medical Transportation.
Rider means the individual being transported by driver.
Service means the provision by driver of Non-Emergency Medical Transportation for rider.

Terms:

Driver agrees to abide by the following terms and conditions:

1.To act in a professional manner at all times while providing services.

2.To never make comments that are sexually explicit in nature, solicit sexual favors, or engage in sexual activity with ride.

3.To never solicit or accept controlled substances, alcohol, or medication from rider.

4.To never solicit or accept money from riders.

5.To never use alcohol, narcotics, or controlled substances, or be under their influence, while providing services to riders. Prescribed medications can be used by a driver as long as his or her duties can still be performed in a safe manner and driver has written documentation from a treating physician that the medication does not impact the ability to drive.

6.To never eat or consume any beverage while operating the vehicle or while involved in rider assistance.

7.To never smoke in the vehicle when rider is present. For purposes of this agreement, "smoke" includes electronic


cigarettes and any other product or device which emits vapor, smoke, or any similar gaseous matter of any kind.

8. To never wear any type of headphone while providing the service.

9. To be responsible for rider's personal items.

10. To provide, as appropriate to the needs of the rider, assistance with exiting the vehicle, to open and close vehicle doors when passengers enter or exit the vehicle, and to provide assistance as necessary to or from the main door of the place of destination.

11. To properly identify and announce their presence at the entrance of the building at the specified pick-up location if a curbside pick-up is not apparent, or with attending facility staff.

12. To assist the passengers in the process of being seated, including the fastening of the seat belt, when necessitated by the rider's condition.

13. To confirm, prior to allowing any vehicle to proceed, that all passengers are properly secured in their seat belts, car seats, and, when applicable, that wheelchairs and passengers who use wheelchairs are properly secured (Exception: Only a passenger who has a letter, carried on his/her person and signed by the passenger's physician, stating that the passenger's medical condition prevents the rider from using a seat belt, may be transported without a fastened seat belt and then only as allowed by state law).

14. To provide an appropriate level of assistance to passengers, when requested, or when necessitated by a passenger's condition.

15. To provide support and direction to passengers. Such assistance shall also apply to the movement of wheelchairs and mobility-limited persons as they enter or exit the vehicle using the wheelchair lift/ramp, as applicable. Such assistance shall also include stowage by the driver of mobility aids and folding wheelchairs.

16. To act in a professional manner at all times while providing services.

17. To be clean and maintain a neat appearance at all times.

18. To be polite and courteous to riders; riders shall be treated with respect and in a culturally appropriate manner when receiving transportation services. The Manager should notify the volunteer driver of any known cultural issues significant to providing transportation services.

19. To limit review of any confidential rider information to the minimum information necessary to provide the service.

20. To only use or record confidential rider information as necessary to provide the Department information necessary for the administration of the program (i.e. mileage reimbursement, if applicable).

Report Date: 12/19/2023
2:22:26 PM

 Michigan Department of Health and
Human Services

Print Terms and Conditions Report

Modification Submission



21. To not to retain any original or copy of any document rider shares with you for purposes of transport.

22. To not to retain any original or copy of any document that may be provided by a health care provider to driver. Driver agrees to ensure that such documentation leaves with rider.

23. To report any breach of the terms of this user agreement to the Department. This includes, but is not limited to, accidental retention of medical record or other confidential rider information.

24. To return to the Department, as soon as possible, but in no event later than 3 business days after discovery, any confidential rider information retained left with driver after completing transport of the rider.

25. To never discuss, write, or share in any other format any information specific to a rider, except as necessary to communicate with the Department or with a health care provider or other staff at a facility rider is being transported to.

26. Not input or include any confidential rider information in any computer system of any kind, except as approved by the Department. This includes personal email accounts, file transfer systems, note applications, and any other electronic system of recording data not expressly approved for use by the Department.

27. Comply with any other agreements driver has entered into with respect to this program.

28. Respect the rider's privacy by not asking for more information about the individual's condition, reason for visit, or other personal information, while providing transport services. If the rider chooses to voluntarily share this information, it is subject to the same protections described above regarding protecting rider information.

☑ By checking this, I certify that I have read and that I agree and accept the enrollment conditions in the Medical Assistance Provider Enrollment & Trading Partner Agreement.

# Exhibit 2

## PURPOSE

The home help program is administered by the Michigan Department of Health and Human Services (MDHHS) and provides personal care services to individuals who need hands-on assistance with activities of daily living (ADLs) and assistance with instrumental activities of daily living (IADLs). MDHHS is responsible for approving home help agency providers for participation in the program.

## DEFINITIONS

**Agency Caregiver** -The direct care worker. This caregiver provides personal care services to an MDHHS home help client.

**Agency Employee** - An employee of a home help agency who has access to information regarding a home help client for the purposes of billing, answering phone calls or assisting with setting up services for MDHHS home help clients.

**Agency Owners** - Possesses 5 percent or greater direct or indirect ownership interest of the agency and/or person with control interest.

**Agency Provider -** Must meet any one of the criteria below:

- A current Medicare certified home health agency with Medicare certification and a federal taxpayer identification number (TIN).

- An approved agency with a TIN that directly employs all (but not less than two) agency caregivers, not including the owner, who are providing services through the home help program and regularly receiving a monthly paycheck.

- A Community Mental Health Services Program (CMHSP) that works with clients who use arrangements that support self-determination.

**Agency Representative/Resident Agent** - An individual who is authorized to act on behalf of the agency owner.

**Board of Directors** - A group of individuals elected or selected to act as representatives of the shareholders to establish corporate management-related policies and to make decisions on major company issues.

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 21:11:04    Page 38 of 95

**Client** - A Medicaid beneficiary who is receiving services through the MDHHS Home Help program.

**Managing Employee** - A general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operation of the institution, organization, or agency, either under contract or through some other arrangement, whether or not the individual is a W-2 employee.

## PROVIDER OPERATING STANDARDS

### Employee Identification

Agency caregivers and agency employees who have direct contact with clients must carry and present a state or home help agency issued photo identification whenever they enter a client's home. In addition, agency caregivers are required to show their identification whenever requested by the MDHHS adult services worker (ASW) or other MDHHS staff working in collaboration with the home help program.

### Criminal History Screening

Agency owners, agency caregivers, and agency employees who have access to the MDHHS home help clients' home or personal information are subject to criminal history screenings and program exclusions consistent with the provisions outlined in current home help policy. Home help agency caregivers and agency employees must also associate in CHAMPS to the agency where they are employed. The date of this association should not be earlier than the date the criminal history check was completed to protect client safety.

Agency caregivers and agency employees who do not meet the criminal history criteria may continue to work for the agency but cannot provide home help services funded by MDHHS through the home help program. Agency caregivers and agency employee with a criminal history will not have the option of continuing services by having a home help client complete the Personal Choice and Acknowledgement of Provider Selection Form.

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/01/25 11:17:04    Page 39 of 95

**Required Contact
between Agency
Representative
and Resident
Agents and ASW.**

The ASW is required to meet with home help clients every six months to complete a review of client needs. Part of this review process involves a conversation between the agency caregiver who is providing the direct hands on care to the home help client and the ASW. This contact will be initiated by the ASW but may require follow-up by the agency caregiver if the initial attempt is unsuccessful. At least once per year, this contact must be a face-to-face contact between the ASW and the agency caregiver.

**Note:** If the agency is just beginning services with a client, the initial contact may be with either the agency owner and/or the agency caregiver. Once services have begun, subsequent contact must be with the agency caregiver who is providing the direct hands-on care to the home help client. Failure to cooperate with these requirements can result in suspension of payment to the agency.

The ASW will explain the following points with the home help client and agency caregiver:

- Home help services are a benefit to the client and earnings to the agency provider.

- **All** earned income must be reported to the IRS; see www.irs.gov.

- The agency provider is employed by the client **not** the State of Michigan.

- As the employer, the home help client has the right to hire and fire the agency provider.

- The home help program is funded by Medicaid and payments will not be authorized by the department if the home help client's Medicaid eligibility is inactive.

- The home help client and/or agency provider is responsible for notifying the ASW within **10 business days** of any change; including but not limited to hospitalizations, nursing home or adult foster care admissions.

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 21:17:04    Page 40 of 95

- The client and/or agency provider is responsible for notifying the ASW within **10 business days** of a change in agency provider and/or agency caregiver or discontinuation of services. Payments must only be authorized to the agency providing approved services.

- If the agency name on the warrant does not provide services or the agency only provides services for a portion of the authorized period, the warrant must be returned.

  **Note:** Failure to comply with any of the above may be considered fraudulent or require recoupment.

The home help client **and** agency provider **must** sign the MSA-4676, Home Help Services Statement of Employment, **before** payments are authorized. The ASW will print **two** copies of the MSA-4676 along with **two** copies of the time and task. One copy of the MSA-4676 is to be given to the home help client and the second copy is to be given to the agency provider.

**Recruitment and Marketing**

Recruitment of caregivers or clients is not allowed in MDHHS offices or anywhere on MDHHS premises. Home help agencies may not use materials developed by MDHHS in advertising, marketing, or recruitment in a manner that misrepresents the home help agency's relationship with the state or the home help program. The use of the MDHHS logo on agency documents is prohibited. Agencies are not allowed to recruit or direct their advertising to Medicaid beneficiaries and/or their active individual caretakers who are already receiving home help services through MDHHS. An agency caregiver may not provide services to a home help client who they were assisting as an individual provider for 90 days after commencement of employment with the agency or for 90 days after termination of services as the client's individual provider, whichever comes later.

**Example:** Mrs. Smith is a home help client. She uses her adult daughter, Becky, as her individual home help provider. Becky recently had contact with a home help agency and would like to work for the agency. Her start date is May 1st. Becky may work for the agency and care for other clients as of May 1st. She may also continue as an individual provider for her mother, Mrs. Smith. If the agency wants to take Mrs. Smith as a client, they can assign a different provider for her care. Becky will not be able to care for

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 11:17:04    Page 41 of 95

Mrs. Smith through the agency until there is at least a 90-day break in service. Therefore, in this case, if Mrs. Smith began with the agency on May 1st, her daughter, Becky could not be her agency caregiver until July 30th which would be 90 days.

Agencies may conduct standard employee recruitment (for example, posting openings) and general advertising outside of MDHHS office and off MDHHS premises.

**Non-Competition Conditions**

The agency provider will neither have, nor enforce, any agreements or requirements that prohibit an agency caregiver or agency employee from working with a different home help client or for another home help agency during or after ending employment, regardless of when the agreement was signed.

**Payment for Services**

Home help agencies must directly employ all agency caregivers and agency employees who work with home help clients. Medicaid will not reimburse an agency for services that were provided by a contracted caregiver. Agency caregivers and agency employees may not subcontract services to someone not directly employed by the agency. All agency caregivers and agency employees must be enrolled in CHAMPS and associated to the home help agency prior to providing home help services so that a criminal history check is completed.

Agencies will accept the authorized home help payment as payment in full for home help services rendered. Clients shall not be required or solicited to supplement home help payments for the same services authorized by MDHHS.

**Record Retention**

Agencies are required to maintain supporting documentation verifying that services billed to MDHHS were provided to the client. At a minimum, this includes verification of days and times worked, tasks completed, and names of clients the provider worked with each day. The agency provider is also required to keep a copy of the approved time and task from MDHHS for each client. Records need to be kept for seven years from the date of service.

Providers must, upon request from authorized agents of the state or federal government, make available for examination and photocopying all medical records, quality assurance documents, financial records, administrative records, and other documents and records that must be maintained. Failure to make requested records available for examination and duplication and/or extraction through the method determined by authorized agents of the state or federal government may result in the provider's suspension and/or termination from Medicaid. Failure to produce supporting documentation for claims may also results in recoupment for home help payments made to the agency.

## AGENCY ENROLLMENT AND DISENROLLMENT

### Agency Enrollment

**Approval Process for New Agencies**

New provider agencies must:

- Have a federal employer identification number (EIN).
- Submit the following documents to the MDHHS home help unit:

  - A letter of intent signed by the agency owners(s) specifying what services the agency will be providing. Additional items to be included in the letter are:

    -- Contact information for the home help agency owner and managing employee. If the owner is the managing employee, note this is the letter.

    -- If the agency is managed by a separate individual their contact information needs to be included.

  **Note:** Contact information includes email, phone number and agency owner home address.

    -- The letter needs to specify that these individuals will ensure that the agency and the agency's caregivers and employees have read all current MDHHS home help policies and procedures and will provide services in compliance with those requirements.

  - Copies of the internal revenue services (IRS) form W-4, Employee's Withholding Allowance Certificate, for all

agency caregivers and agency employees. This verifies that all caregivers and employees involved in the home help program are directly employed by the agency.

- Please register your agency with the Department of Licensing and Regulatory Affairs (LARA) or your county clerk's office. Once this step is completed send in your articles of organization or similar documents.

**Note:** Any documents other than articles of organization must be in a format approved by the home help unit.

- An agency that has been operating, but not with the Michigan Medicaid Home Help program, must provide all additional documents listed below:

  - A current copy of the IRS Form-941, Employer's Quarterly Federal Tax Return, or relevant filing/statement demonstrating current compliance with the Federal Insurance Contributions Act (FICA) tax.

  - A current copy of form UIA-1028, Employer's Quarterly Wage/Tax Report, or a similar form demonstrating the agency's current compliance of state unemployment insurance filings and payment.

  - A list of current caregivers and employees who work for the agency and will provide services for home help clients. The list should include caregiver/employee name, date of birth and Community Health Automated Medicaid Processing System (CHAMPS) provider ID;

  - A copy of W-4s for all current Home Help agency caregivers and employees.

  - A copy of the IRS form W-9 Request for Taxpayer Identification Number and Certification for the agency.

- A current Medicare certified home health agency is only required to provide a letter of intent and a copy of the current Medicare certification.

Submit all required documentation described above to:

Email to: MDHHS-MSA-HHProviderReporting@Michigan.gov

25-04104-mar   Doc 1   Filed 06/17/25   Entered 06/17/25 11:17:04   Page 44 of 95

Fax to: 517-335-7959.

Postal mail to:

>MDHHS Home Help Unit
>Capitol Commons Center, 6th Floor
>400 S. Pine St.
>Lansing, MI 48913

**Note:** Agencies are encouraged to scan and email documents to the email listed above with the subject line of agency application. This enables staff to quickly identify these documents and respond that the documents have been received. Fax and postal mail are acceptable, however, the reply that documents have been received will not be available.

- Agencies must register their vendor account with the State of Michigan by visiting the Sigma Vendor Self Services website at www.michigan.gov/SIGMAVSS. Refer to the SOM VSS User Guide for New Vendors reference document for further instructions. Agency providers should keep a record of the new Vendor Customer ID, download and print the substitute W-9 form for agency records, and submit a copy of the form to MDHHS by one of the methods stated above.

- Home Help agencies involved in the home help program must register in CHAMPS and have a criminal history screening done prior to delivering services or working with MDHHS Home Help clients. Instructions on how to complete this process are located on the MDHHS website at www.michigan.gov/homehelp or by calling provider support at 1-800-979-4662. Agencies must revalidate their CHAMPS registration information a minimum of once every five years, or more often if requested by MDHHS. If the agency fails to submit the CHAMPS application within 60 days of the application start date, the agency application will be denied.

**Note:** Upon CHAMPS approval from MDHHS, all agency caregivers and agency employees working with the home help program must also register in CHAMPS, pass a criminal history screening and be associated to the agency provider using the seven-digit provider ID number assigned to the Home Help Agency.

### Agency Enrollment, Approval, or Denial

The agency provider will be notified in writing of its approval, denial or the need for additional information within 30 calendar days of all

25-04104-mar    Doc 1    Filed 06/17/25    Entered 06/17/25 11:17:04    Page 45 of 95

required documents being received. Application directions can be found online at: www.michigan.gov/homehelp.

An agency provider shall be denied enrollment if any of the agency owners, agency representatives/ resident agents, or managing employees had direct or indirect ownership interest and/or control interest of a home help agency that was suspended or terminated from the Michigan Medicaid program within the preceding five years.

**Additional Verification Needed for New Agencies**

Within 120 days of agency approval, the agency must submit the following documentation to the MDHHS home help unit:

- A letter identifying the agency owner(s) and administrator, along with their contact information (to include address, phone number and e-mail information).

- A copy of the most recent IRS Form- 941 demonstrating that the FICA tax is paid on a quarterly basis.

- A copy of the most recent form UIA-1028 or a similar form demonstrating the agency's payment of state unemployment insurance.

- Copies of IRS form W-4 for all agency caregivers who are currently providing services to home help clients.

- A list of all agency caregivers and agency employees who are currently providing services to home help clients, including their first and last name, date of birth, and their CHAMPS provider ID. This list should match the providers currently listed in CHAMPS and associated to the home help agency.

**Reporting**

Agencies must report all changes affecting agency provider enrollment by updating agency information in CHAMPS. This includes, but is not limited to, changes in agency ownership, address, contact name, telephone number, email, or an agency caregiver or employee. Failure to notify MDHHS within 10 calendar days of the change may result in the termination of the agency provider's enrollment, a reduction from the agency provider reimbursement rates to individual provider rates, or the denial of claims for services provided.

25-04104-mar   Doc 1   Filed 06/17/25   Entered 06/17/25 12:04:14   Page 46 of 95

The MDHHS home help unit will audit employment documents for a sample of agencies each year. An agency selected for audit will be required to provide current copies of the employment documents cited *in this item* under the agency enrolment section along with supporting verifications of services related to a specific payment. Agencies must submit the requested information within 30 calendar days to MDHHS. Failure to provide documents by the due date may result in a reduction of payment rate. Failure to provide the required documents within 60 calendar days will result in the agency being removed from the Approved home help sgency list for a minimum of 30 calendar days or until compliance, whichever is longer.

Other authorized areas within MDHHS may also request documents or other records needed for the home help program. Agencies must follow the timelines specified in those requests.

**Approved Disenrollment's**

When an agency is disenrolled, any authorizations for home help payments are terminated in the state payment system. Notice is sent to the agency provider and the local MDHHS office within 10 calendar days of the MDHHS determination of disenrollment. MDHHS may disenroll an agency for any of the following reasons:

- An agency may be disenrolled if the agency or any of its caregivers or employees are found guilty of Medicaid fraud or client abuse, exploitation or neglect.

- An agency may be disenrolled for falsifying information in its application documents, provider agreement, quarterly reporting, service verification or billing.

- An agency may be disenrolled if the agency owner(s), agency representative/resident agent, or member of the board of directors has a mandatory or permissive criminal conviction as outlined in bulletin MSA 14-31.

- An agency may be disenrolled for failing to report changes or update CHAMPS within 10 calendar days of the change.

- An agency may be disenrolled if it fails to meet any of the requirements in this policy.

An agency may be suspended if it is being investigated for fraud, abuse, exploitation or neglect, pending the outcome of the investigation.

**Approved Agency List**

MDHHS maintains a list of agencies approved to provide home help services to MDHHS clients. Agencies must be on the approved agency list to be eligible for the agency rate. These lists are updated monthly and sent to local office to use as a resource when clients are looking for providers. MDHHS may remove an agency from the approved agency list for the following reasons:

- An agency has not provided home help services within the last six months.

- An agency fails to meet any of the requirements in this policy

- An agency fails to meet any of the requirements in this policy not already listed under the disenrollment section *in this item*.

Agencies removed from the approved agency list may still be coded as an agency in CHAMPS and will be eligible to provide services at the individual rate for home help. Agencies that would like to be reinstated as an approved home help agency provider should send an email to MDHHS-MSA-HHProviderReporting@michigan.gov to request information on how to become reinstated.

**Participation as an Agency Provider**

Participation in the home help program as an agency provider is subject to denial, suspension, or termination in accordance with MCL 400.111e.

**Appeals**

Agency providers and applicants have the right to appeal any adverse action taken by MDHHS. The appeal process is subject to the Social Welfare Act. PA 280 of 1939; MCL 400.01 et seq., Chapter 4 and 6 of the Administrative Procedures Act of 1969: MCL 24.271 to 24.287 and MCL 24.301 to 24.306, and the Michigan Administrative Code regarding Medical Services Administration (MSA) Provider Hearing (R 400.3401- 400.3425 and R 792.10904 - 792.10906).

### Existing Agencies

MDHHS will inform an agency provider of disenrollment through an adverse action notice (also known as a negative action notice).

The agency may appeal within 30 calendar days of the notice to the Michigan Administrative Hearing System (MAHS). Existing agency providers may continue to provide services during the appeal period if the agency provider accepts the responsibility of the repayment of funds should the MDHHS decision be upheld. The agency provider may not accept new Medicaid home help clients during the appeal period. During this time, the home help client continues to have the right to terminate the agency provider at any time and without cause.

**Note:** The process described above may not reflect actions taken on behalf of MDHHS by the MDHHS Office of Inspector General (OIG). An agency provider suspended from the home help program by OIG cannot operate during the suspension and has 15 calendar days to appeal the OIG decision.

### New Agency Applicants

MDHHS will inform new agency provider applicants of ineligibility factors identified through screening and/or evaluation. The agency provider may appeal within 30 calendar days of notification of being denied or of losing agency statues to MAHS. New agencies denied enrollment during the screening application process are not eligible to receive MDHHS payment for home help services during the appeal period.

## AGENCY BILLING

Agency providers have the option of submitting monthly invoices for each month of services in lieu of the DHS-721, Provider Log. Each invoice must specify the following:

- Client name.
- The service(s) provided.
- The date(s) of service.
- Total hours and total monthly dollars.
- Should include travel time for shopping and/or laundry if applicable; see ASM 141.

Payment authorization cannot be entered in MiAIMS until the invoice is received. The invoice should not be received prior to the last day services were provided for the month. Hours billed must not exceed the approved functional assessment client time and task amount. If an invoice is not accurate, the ASW needs to request a new updated invoice before payment is authorized.

Invoices must be received within 365 days of the service date. Failure to submit an invoice within 365 days of the services date will result in non-payment.

The ASW must mail the DHS-721 forms and instructions to clients or client representatives for agency providers who are not submitting a monthly invoice. The DHS-721 form should be completed as follows:

- The agency provider/caregiver must mark an (X) for each day an approved task was provided for each month in the services period, including documentation of travel time for shopping and/or laundry if applicable.

- The agency provider/caregiver must sign and date the form at the end of the service period to certify provision of the approved tasks.

- The client/employer must review the form then sign and date it to verify the services were delivered as agreed.

- The signed and dated form should be returned to the ASW after the last day of the service period or the last day the services were provided.

- The ASW should review the form to ensure the steps above were completed before authorizing payment for the next 3-months.

  **Note:** Payment authorizations should not exceed three months when a DHS-721 is being used for verification of services. If the DHS-721 is not returned within 10 business days of the due date the ASW should initiate the DHS-1212, Negative Action Notice. No additional payment authorizations should be entered on MiAIMS until the missing DHS-721 is received. This could result in delay of payment or termination of payment. If the DHS-721 is not received after the negative action period, the ASW will need to initiate a recoupment of funds.

**LOCAL OFFICE
HOME HELP
AGENCY PROVIDER
HOURLY RATE**

Each local MDHHS office has an established agency home help provider rate. ASWs must **not** authorize above or below the

established county rate. For the list of individual and agnecy hourly ates see ASM 138, County Rates.

25-04104-mar     Doc 1     Filed 06/17/25     Entered 06/17/25 11:17:04     Page 51 of 95

# Exhibit 3



| | |
|---|---|
| **Bulletin Number:** | MSA 15-13 |
| **Distribution:** | Home Help Agency Providers, Prepaid Inpatient Health Plans (PIHPs), Community Mental Health Services Programs (CMHSPs) |
| **Issued:** | May 1, 2015 |
| **Subject:** | Changes in Home Help Agency Provider Standards |
| **Effective:** | June 1, 2015 |
| **Programs Affected:** | Home Help |

## A. BACKGROUND

The Home Help program is administered by the Michigan Department of Health and Human Services (MDHHS). The Home Help program provides personal care services to individuals who need hands-on assistance with Activities of Daily Living (ADLs) and assistance with Instrumental Activities of Daily Living (IADLs). MDHHS is responsible for approving Home Help agency providers for participation in the program. The purpose of this policy is to provide standards for Home Help agency providers who wish to qualify for reimbursement at the higher agency rate.

## B. PROVIDER QUALIFICATIONS

### 1. Agency Provider Definition

In order to qualify for reimbursement at the agency rate, the agency must be:

- A Medicaid-enrolled home health agency with Medicare certification and a Federal Tax Identification Number; **OR**
- An agency with a Federal Tax Identification Number that directly employs two or more workers, not including the owner, providing services through the Home Help program; **OR**
- A Community Mental Health Services Program (CMHSP) that contracts with clients who use arrangements that support self-determination to directly employ workers.

### 2. Criminal History Screening

Agency owners and all agency employees that either provide Home Help services or have access to a client's home are subject to criminal history screenings and program exclusions consistent with provisions outlined in Bulletins MSA 14-31 and MSA 14-40. Owners and agency personnel must register in the Community Health Automated Medicaid Processing System (CHAMPS) for MDHHS to conduct the screenings. The Personal Choice and Acknowledgement of Provider Section of Bulletin MSA 14-40 may only be applied to Home Help agency personnel that provide direct personal care services to a Medicaid beneficiary per the provisions set forth in that bulletin, but may not be applied to other agency staff.

MSA bulletins can be found on the MDHHS website at www.michigan.gov/medicaidproviders >> Policy and Forms.

## C. PROVIDER OPERATING STANDARDS

### 1. Employee Identification

Agency staff that has direct contact with clients must carry and present a State or Home Help agency issued photo identification whenever they enter a client's home.

### 2. Recruitment and Marketing

Agencies shall not engage in any agency-initiated direct communication with current clients, their guardians or family members for the purpose of recruiting current individual Home Help providers to serve as an agency's employee. Agencies may conduct standard employee recruitment (e.g. posting openings) and general advertising.

### 3. Non-Competition Conditions

The agency will neither have nor enforce any agreements or requirements that prohibit an individual employee from working with a different Home Help client or for another agency provider after ending employment with the first agency, regardless of when the agreement was signed.

### 4. Payment for Services

The agency will accept the authorized Home Help payment as payment in full for Home Help services rendered. Clients shall not be required or solicited to supplement Home Help payments.

## D. AGENCY ENROLLMENT AND DISENROLLMENT

### 1. Approval Process

Agencies seeking to provide services in the Home Help program must be approved by MDHHS before they are approved for the agency rate. The agency must submit to MDHHS a letter of intent, which needs to include contact information for the Home Help agency owner and administrator, and assure that the agency will provide services in compliance with Home Help policies and procedures. In addition:

- A Medicaid-enrolled home health agency must provide a copy of current Medicare certification.
- All other agencies must provide each of the following:

  - A current copy of the Employer's Quarterly Federal Tax Return (IRS-941) demonstrating that the Federal Insurance Contributions Act (FICA) tax is paid on a quarterly basis; and
  - A current copy of the Employer's Quarterly Tax Report (UIA-1028) demonstrating the agency's payment of state unemployment insurance.

- An agency that has not provided services at the time of application must provide a letter of intent, Request for Taxpayer Identification Number and Certification (W-9) form, and a copy of the Internal Revenue Service (IRS) W-4 form for at least two employees, not including the owner. The agency then must submit the IRS-941 and UIA-1028 within 120 days or its agency approval will be terminated. If the documentation is not provided within the time limit, the agency's payment authorization will be changed from the agency hourly rate to the individual hourly rate. Submit documentation by email to MDCH-MSA-HHProviderReporting@michigan.gov, by fax to 517-335-7959, or by postal mail to:

      MDHHS Long-Term Care Policy
      Capitol Commons Center, 6th Floor
      400 S. Pine St.
      Lansing, MI 48913

The agency will be notified in writing of its approval, denial or the need for additional information within 30 days. Application directions can be found online at: www.michigan.gov/homehelp.

2.  **Provider Registration**

    Agencies and workers must register in CHAMPS as noted in the above Criminal History Screening subsection of this bulletin. Also, in order to receive payment for Home Help services, an agency must register with the State of Michigan by submitting a Request for Taxpayer Identification Number and Certification (W-9) to Vendor Registration online at www.mi.gov/cpexpress, by fax to 517-373-0297, or by postal mail to:

    > State of Michigan
    > Payee Registration
    > P.O. Box 30026
    > Lansing, MI 48909

3.  **Reporting**

    - Agencies must notify MDHHS of any changes affecting provider enrollment information. Failure to notify MDHHS within 10 business days may result in the termination of the provider's enrollment, the lapse of eligibility for agency provider reimbursement rates, or the denial of claims for services provided.
    - MDHHS will audit employment documents for a sample of agencies each year. An agency selected for audit will be required to provide current copies of the enrollment documents cited above under Approval Process and Provider Registration.
    - Agencies must provide business transaction information to MDHHS upon request.

4.  **Agency Disenrollment**

    MDHHS may disenroll an agency for any of the following reasons:

    - An agency may be disenrolled if the agency or any of its employees are found guilty of Medicaid fraud; or client abuse, exploitation or neglect.
    - An agency may be suspended if it is being investigated for fraud, abuse, exploitation or neglect, pending the outcome of the investigation.
    - An agency may be disenrolled for falsifying information in its application documents, provider agreement, quarterly reporting, service verification or billing.
    - An agency may be disenrolled if it fails to meet any of the requirements in this policy.

    When an agency is disenrolled, any authorizations for Home Help payments are terminated in the state payment system, and notice is sent to the agency and all affected clients and local MDHHS offices within 10 business days of MDHHS's determination of ineligibility.

5.  **Appeals**

    MDHHS will inform an agency of disenrollment through a negative action notice. The agency may appeal within 90 days to the Michigan Administrative Hearing System. If a disenrolled agency appeals, the existing Home Help contracts will remain in effect until a decision has been rendered. During this time, the Home Help client continues to have the right to terminate the provider at any time and without cause.

**Manual Maintenance**

Retain this bulletin until the information is incorporated into the Medicaid Provider Manual.

**Questions**

Any questions regarding this bulletin should be directed to Provider Inquiry, Department of Health and Human Services, P.O. Box 30731, Lansing, Michigan 48909-8231, or e-mail at ProviderSupport@michigan.gov. When you submit an e-mail be sure to include your name, affiliation, and phone number so you may be contacted if necessary. Providers may phone toll-free 1-800-292-2550.

**Approved**

*Stephen Fitton*

Stephen Fitton, Director
Medical Services Administration

# Exhibit 4



GRETCHEN WHITMER
GOVERNOR

ELIZABETH HERTEL
DIRECTOR

# Final Notice of Recovery

October 20, 2023

Jewels Home Health Care Service, LLC
Attention: Kellan Sandifer/Rose Sandifer
14005 Roselawn St.
Detroit, MI 48238
Jewelshomehealthcare@gmail.com

Provider ID: ███████
Case Number: INV-2023-000500

Dear Provider:

The Michigan Department of Health and Human Services Office of Inspector General (MDHHS OIG) has completed a post-payment review of selected Medicaid claims submitted by Jewels Home Health Care Service, LLC. These reviews are performed to ensure compliance with applicable laws, rules, regulations and policies of the Michigan Medicaid program pursuant to The Social Welfare Act, 1939 PA 280, MCL 400.1 et seq.

Pursuant to MCL 333.26368, the Medical Assistance Home Help Provider Agreement (MSA-4678), the Medical Assistance Provider Enrollment & Trading Partner Agreement, and the Adult Services Manual (ASM), MDHHS OIG is authorized to perform post-payment reviews of paid claims to identify and recover any overpayments made to the provider.

MDHHS OIG completed a post-payment review of selected Medicaid claims, submitted by your institution, and notified you of our Preliminary Findings on **September 18, 2023**. You were allowed thirty (30) calendar days to supply additional documentation to support your Medicaid claims.

No additional documentation was received. This is your final notice of recovery.

As a result, pursuant to MCL 400.111a(7)(d), MDHHS OIG seeks to recover **$82,849.25** in payments made to you in excess of the reimbursement to which you were entitled. You are hereby notified that you were overpaid by Medicaid. Please see the attached listing for detailed information. A receivable has been created for the dollar amount above.

If you agree with these findings, please contact MDHHS OIG within thirty (30) calendar days of the date of this letter.

www.michigan.gov/fraud • 1-866-428-0005

If you disagree with these findings, you may request an Administrative Hearing or an Internal Conference as set forth in the 1979 Administrative Code R.400.3401 et seq.

If you wish to request an **administrative hearing**, please fax, email or mail your **written** request, within thirty (30) days of receipt of this notice, to:

Michigan Office of Administrative Hearing and Rules
Michigan Licensing and Regulatory Affairs
P.O. Box 30763
Lansing, MI 48909
MOAHR-BSD@Michigan.gov
FAX: 517-763-0146

Requests for an administrative hearing must include the following:
- A copy of this notice
- Specifically outline/identify the aspects of determination with which you disagree
- Explain the reason(s) for your dissatisfaction
- The dollar amount (if any) involved
- Documentary evidence to support your position and reasoning

If you wish to request an **internal conference**, please fax, email or mail your **written** request, within thirty (30) days of receipt of this notice, to:

MDHHS Appeals
P.O. Box 30807
Lansing, MI 48909
MDHHS-Appeals@michigan.gov
FAX: 517-241-7973

Requests for an internal conference must include the following information:
- A copy of this notice
- Items being appealed
- The dollar amount (if any) involved
- All necessary documentation to support appeal reasoning

If you appeal this action, the Department will not institute recoupment action until the appeal is resolved. If you do not appeal this action within thirty (30) days from the date of this letter, this letter will act as a final determination notice (MAC R 400.3405) and recovery will begin on the 31st day.

If you have any questions or need any additional information, please contact MDHHS OIG Agent Thomas Malik at 517-582-3237.
.

**For correct handling and delivery, please enclose a copy of this letter with all correspondence. MDHHS OIG cannot be responsible for inappropriate routing when a copy of the letter is not attached.**

Sincerely,

MDHHS OIG

Michigan Department of Health and Human Services
Office of Inspector General
P.O. Box 30062
Lansing, MI 48909
Phone: 517-582-3237
Fax: 517-347-1162

Dear Provider:

Pursuant to MCL 333.26368 and Sections 13.2 and 15 of the General Information for Providers section of the Michigan Medicaid Provider Manual, MDHHS OIG is authorized to conduct post-payment reviews of payments made to providers.

Provider ID: ███████
Provider Name: Jewels Home Health Care Service, LLC

| Scenario | Overpayment |
|---|---|
| **Home Help Agency Payroll Review- Recovery:** | |
| **Hospitalizations** (in violation of ASM 101, 135, 136, 150, and 165) - Do not pay the caregiver if the client is unavailable; including but not limited to hospitalizations, nursing home admissions. | $4,056.98 |
| **Non-Enrolled Caregivers** (in violation of MSA 41-31, 14-40, 15-13, and 18-09) - Direct Caregiver was not enrolled in CHAMPS at the time services were rendered and/or no caregiver was identified for the claim. | $78,312.20 |
| **Rate Adjustment** (in violation of MSA 18-09) Home Help payments were issued to the provider at the agency rate during times when the agency did not meet agency standards. The difference between the agency rate and the individual rate will be recovered. | $480.07 |
| Summary | $82,849.25 |

| Warrant ID | Warrant Date | Beneficiary ID | Beneficiary Name | Service Begin Date | Service End Date | Notes | Hospitalization Overpayment | Non-Enrolled Caregiver Overpayment | Rate Adjustment Overpayment | Total Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|
| 201910290074568 | 10/31/2019 | | | 09/25/2019 | 09/30/2019 | No caregiver was identified on the claim. | $0.00 | $101.91 | $0.00 | $101.91 |
| 201912100186797 | 12/12/2019 | | | 10/01/2019 | 10/06/2019 | Henry Ford Health 10/6/2019 to 10/9/2019. No caregiver was identified on the claim. | $15.45 | $77.26 | $0.00 | $92.71 |
| 201912100186797 | 12/12/2019 | | | 10/10/2019 | 10/31/2019 | No caregiver was identified on the claim. | $0.00 | $442.98 | $0.00 | $442.98 |
| 201912170205307 | 12/19/2019 | | | 11/01/2019 | 11/15/2019 | No caregiver was identified on the claim. | $0.00 | $312.10 | $0.00 | $312.10 |
| 201912170205307 | 12/19/2019 | | | 11/20/2019 | 11/30/2019 | No caregiver was identified on the claim. | $0.00 | $228.87 | $0.00 | $228.87 |
| 202001280307258 | 01/30/2020 | | | 12/01/2019 | 12/16/2019 | No caregiver was identified on the claim. | $0.00 | $322.17 | $0.00 | $322.17 |
| 202001280307258 | 01/30/2020 | | | 12/20/2019 | 12/24/2019 | No caregiver was identified on the claim. | $0.00 | $100.68 | $0.00 | $100.68 |
| 202001280307258 | 01/30/2020 | | | 12/26/2019 | 12/31/2019 | No caregiver was identified on the claim. | $0.00 | $120.81 | $0.00 | $120.81 |
| 202002110350926 | 02/13/2020 | | | 01/01/2020 | 01/31/2020 | Henry Ford Health 1/5/2020 to 1/7/2020, Sinai Grace 1/29/2020 to 1/31/2020. No caregiver was identified on the claim. | $82.03 | $542.17 | $0.00 | $624.20 |
| 202003170444271 | 03/19/2020 | | | 02/01/2020 | 02/29/2020 | Henry Ford Health 2/18/2020 to 2/21/2020. No caregiver was identified on the claim. | $61.52 | $562.68 | $0.00 | $624.20 |
| 202004070501374 | 04/09/2020 | | | 03/01/2020 | 03/15/2020 | Henry Ford Health 3/1/2020 to 3/3/2020, 3/14/2020 to 3/20/2020. | $80.54 | $0.00 | $0.00 | $80.54 |
| 202005120582023 | 05/14/2020 | | | 04/01/2020 | 04/30/2020 | Henry Ford Health 4/4/2020 to 4/6/2020. No caregiver was identified on the claim. | $46.73 | $664.42 | $0.00 | $711.15 |
| 202006160658455 | 06/18/2020 | | | 05/01/2020 | 05/31/2020 | Sinai Grace 5/20/2020 to 5/22/2020, Henry Ford Health 5/29/2020 to 5/31/2020. No caregiver was identified on the claim. | $93.46 | $617.69 | $0.00 | $711.15 |
| 202007140723263 | 07/16/2020 | | | 06/01/2020 | 06/30/2020 | No caregiver was identified on the claim. | $0.00 | $711.15 | $0.00 | $711.15 |
| 202008110797983 | 08/13/2020 | | | 07/01/2020 | 07/31/2020 | Sinai Grace 7/20/2020 to 7/22/2020 (7/5 to 7/8 Already Recovered by MDHHS, AR# 20200973690). No caregiver was identified on the claim. | $46.73 | $630.23 | $0.00 | $676.96 |
| 202009220908232 | 09/24/2020 | | | 08/01/2020 | 08/31/2020 | Henry Ford Health 8/12/2020 to 8/16/2020, Sinai Grace 8/24/2020 to 8/26/2020. No caregiver was identified on the claim. | $140.19 | $570.96 | $0.00 | $711.15 |
| 202010130967482 | 10/15/2020 | | | 09/01/2020 | 09/30/2020 | Henry Ford Health 9/3/2020 to 9/5/2020, 9/10/2020 to 9/13/2020, 9/22/2020 to 9/24/2020, 9/30/2020 to 10/2/2020. No caregiver was identified on the claim. | $186.91 | $524.24 | $0.00 | $711.15 |
| 202011091035612 | 11/12/2020 | | | 10/01/2020 | 10/12/2020 | Henry Ford Health 9/30/2020 to 10/2/2020, 10/11/2020 to 10/16/2020. No caregiver was identified on the claim. | $68.82 | $206.47 | $0.00 | $275.29 |
| 202011091035612 | 11/12/2020 | | | 10/19/2020 | 10/31/2020 | Henry Ford Health 10/21/2020 to 10/25/2020. No caregiver was identified on the claim. | $91.76 | $206.47 | $0.00 | $298.23 |
| 202012151123973 | 12/17/2020 | | | 11/01/2020 | 11/28/2020 | Henry Ford Health 11/4/2020 to 11/6/2020, 11/9/2020 to 11/10/2020, 11/16/2020 to 11/18/2020, 11/28/2020 to 12/2/2020. | $142.23 | $0.00 | $0.00 | $142.23 |
| 202101121192091 | 01/14/2021 | | | 12/03/2020 | 12/30/2020 | Sinai Grace 12/4/2020 to 12/7/2020, Henry Ford Health 12/11/2020 to 12/17/2020, 12/22/2020 to 1/12/2021. No caregiver was identified on the claim. | $412.93 | $229.40 | $0.00 | $642.33 |
| 202103231368864 | 03/25/2021 | | | 01/19/2021 | 01/31/2021 | Beaumont Taylor 1/13/2021 to 1/20/2021, Henry Ford 1/23/2021 to 1/27/2021. No caregiver was identified on the claim. | $114.70 | $183.53 | $0.00 | $298.23 |
| 202103231368864 | 03/25/2021 | | | 02/01/2021 | 02/28/2021 | Henry Ford Health 2/28/2021 to 3/4/2021. No caregiver was identified on the claim. | $23.36 | $687.79 | $0.00 | $711.15 |
| 202104061408291 | 04/08/2021 | | | 03/01/2021 | 03/31/2021 | Henry Ford Health 2/28/2021 to 3/4/2021, 3/20/2021 to 3/23/2021 (3/2, 3/3, 3/21, 3/22 Already Recovered by MDHHS, AR# 20210579074, 20210883603). No caregiver was identified on the claim. | $47.44 | $569.88 | $0.00 | $617.32 |
| 202105111491337 | 05/13/2021 | | | 04/01/2021 | 04/30/2021 | Henry Ford Health 4/4/2021 to 4/6/2021, 4/10/2021 to 4/13/2021, 4/24/2021 to 4/26/2021 (4/5 Already Recovered by MDHHS, AR# 20210781664). | $142.33 | $0.00 | $0.00 | $142.33 |

Prepared by Malik_Thomas (MDHHS)

| Warrant ID | Warrant Date | Beneficiary ID | Beneficiary Name | Service Begin Date | Service End Date | Notes | Hospitalization Overpayment | Non-Enrolled Caregiver Overpayment | Rate Adjustment Overpayment | Total Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|
| 202106081561353 | 06/10/2021 | | | 05/01/2021 | 05/31/2021 | Henry Ford Health 5/1/2021 to 5/3/2021, 5/28/2021 to 6/1/2021. No caregiver was identified on the claim. | $118.61 | $603.41 | $0.00 | $722.02 |
| 202107131643334 | 07/15/2021 | | | 06/01/2021 | 06/30/2021 | Sinai Grace 6/5/2021 to 6/7/2021, Henry Ford Health 6/7/2021 to 6/9/2021, 6/20/2021 to 6/23/2021, 6/25/2021 to 7/4/2021 (6/5, 6/6, 6/20 to 6/22, 6/27 to 6/30 Already Recovered by MDHHS, AR# 20210983990, 20210984510). No caregiver was identified on the claim. | $94.89 | $393.59 | $0.00 | $488.48 |
| 202108101714564 | 08/12/2021 | | | 07/01/2021 | 07/31/2021 | Henry Ford Health 6/25/2021 to 7/4/2021, 7/19/2021 to 7/22/2021 (7/1 to 7/3, 7/20, 7/21, 7/25 to 7/28 Already Recovered by MDHHS, AR# 20210984510). No caregiver was identified on the claim. | $23.72 | $501.42 | $0.00 | $525.14 |
| 202109211823547 | 09/23/2021 | | | 08/15/2021 | 08/31/2021 | Sinai Grace 8/11/2021 to 8/16/2021, 8/23/2021 to 8/26/2021, Henry Ford Health 8/30/2021 to 9/5/2021. No caregiver was identified on the claim. | $139.75 | $256.20 | $0.00 | $395.95 |
| 202110121881358 | 10/14/2021 | | | 09/09/2021 | 09/30/2021 | Henry Ford 9/8/2021 to 9/10/2021. No caregiver was identified on the claim. | $33.81 | $710.09 | $0.00 | $743.90 |
| 202111161958332 | 11/18/2021 | | | 10/01/2021 | 10/31/2021 | Henry Ford Health 10/2/2021 to 10/6/2021 (10/22, 10/23 Already Recovered by MDHHS, AR# 20220189605). No caregiver was identified on the claim. | $134.10 | $819.27 | $0.00 | $953.37 |
| 202112142034690 | 12/16/2021 | | | 11/01/2021 | 11/30/2021 | Sinai Grace 11/11/2021 to 11/12/2021, 11/14/2021 to 11/15/2021, 11/30/2021 to 12/1/2021 (11/2 to 11/5, 11/25 to 11/27 Already Recovered by MDHHS, AR# 20220290573). No caregiver was identified on the claim. | $100.57 | $759.67 | $0.00 | $860.24 |
| 202201112104953 | 01/13/2022 | | | 12/01/2021 | 12/31/2021 | Sinai Grace 12/26/2021 to 12/28/2021. | $67.05 | $0.00 | $0.00 | $67.05 |
| 202202082179181 | 02/10/2022 | | | 01/01/2022 | 01/31/2022 | Henry Ford Health 1/4/2022 to 1/6/2022 (1/5, 1/15 to 1/17, 1/22 to 1/31 Already Recovered by MDHHS, AR# 20220492987). No caregiver was identified on the claim. | $33.52 | $535.44 | $0.00 | $568.96 |
| 202203222284640 | 03/24/2022 | | | 02/01/2022 | 02/06/2022 | Henry Ford Health 1/22/2022 to 2/10/2022. | $218.66 | $0.00 | $0.00 | $218.66 |
| 202203222284640 | 03/24/2022 | | | 02/10/2022 | 02/11/2022 | No caregiver was identified on the claim. | $0.00 | $72.89 | $0.00 | $72.89 |
| 202203222284640 | 03/24/2022 | | | 02/17/2022 | 02/28/2022 | Henry Ford Health 2/22/2022 to 2/27/2022. No caregiver was identified on the claim. | $182.22 | $255.10 | $0.00 | $437.32 |
| 202204122340254 | 04/14/2022 | | | 03/01/2022 | 03/31/2022 | Sinai Grace 3/3/2022 to 3/5/2022, 3/9/2022 to 3/11/2022, 3/29/2022 to 4/12/2022, Henry Ford 3/18/2022 to 3/20/2022 (3/10 Already Recovered by MDHHS, AR# 20220695313). No caregiver was identified on the claim. | $234.67 | $752.22 | $0.00 | $986.89 |
| 202205102414587 | 05/12/2022 | | | 04/01/2022 | 04/01/2022 | Sinai Grace 3/29/2022 to 4/12/2022. | $34.01 | $0.00 | $0.00 | $34.01 |
| 202205102414587 | 05/12/2022 | | | 04/12/2022 | 04/30/2022 | Henry Ford Health 4/14/2022 to 4/19/2022. No caregiver was identified on the claim. | $171.86 | $474.40 | $0.00 | $646.26 |
| 202206142503529 | 06/16/2022 | | | 05/13/2022 | 05/24/2022 | Henry Ford Health 5/14/2022 to 5/19/2022. No caregiver was identified on the claim. | $167.27 | $227.73 | $0.00 | $395.00 |
| 202206142503529 | 06/16/2022 | | | 05/29/2022 | 05/31/2022 | No caregiver was identified on the claim. | $0.00 | $98.75 | $0.00 | $98.75 |
| 202207192593120 | 07/21/2022 | | | 06/01/2022 | 06/30/2022 | Sinai Grace 6/19/2022 to 6/20/2022. No caregiver was identified on the claim. | $40.54 | $979.87 | $0.00 | $1,020.41 |
| 202208162665963 | 08/18/2022 | | | 07/01/2022 | 07/31/2022 | Henry Ford Health 7/7/2022 to 7/10/2022, 7/15/2022 to 7/18/2022, 7/27/2022 to 7/31/2022 (7/8, 7/9 Already Recovered by MDHHS, AR# 20231099918). No caregiver was identified on the claim. | $28.22 | $919.55 | $0.00 | $947.77 |

| Warrant ID | Warrant Date | Beneficiary ID | Beneficiary Name | Service Begin Date | Service End Date | Notes | Hospitalization Overpayment | Non-Enrolled Caregiver Overpayment | Rate Adjustment Overpayment | Total Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|
| 202209062710393 | 09/08/2022 | | | 08/01/2022 | 08/31/2022 | Henry Ford Health 8/7/2022 to 8/10/2022 (8/8 and 8/9 Already Recovered by MDHHS, AR# 202311100971). No caregiver was identified on the claim. | $28.22 | $943.09 | $0.00 | $971.31 |
| 202210112839770 | 10/13/2022 | | | 09/01/2022 | 09/30/2022 | Sinai Grace 9/6/2022 to 9/9/2022, Henry Ford Health 9/20/2022 to 9/27/2022 (9/22 to 9/26 Already Recovered by MDHHS, AR# 202312101992). No caregiver was identified on the claim. | $152.08 | $781.69 | $0.00 | $933.77 |
| 202211152926501 | 11/17/2022 | | | 10/01/2022 | 10/17/2022 | Henry Ford Health 10/7/2022 to 10/9/2022, 10/13/2022 to 10/16/2022 (10/7, 10/8, 1014, 10/15 Already Recovered by MDHHS, AR# 202302104536 & 202302104524). No caregiver was identified on the claim. | $27.55 | $412.55 | $0.00 | $440.10 |
| 201907231602026 | 07/25/2019 | | | 05/09/2019 | 05/31/2019 | No caregiver was identified on the claim. | $0.00 | $70.21 | $0.00 | $70.21 |
| 201907231602026 | 07/25/2019 | | | 06/01/2019 | 06/11/2019 | No caregiver was identified on the claim. | $0.00 | $34.70 | $0.00 | $34.70 |
| 201907021560131 | 07/05/2019 | | | 06/12/2019 | 06/30/2019 | No caregiver was identified on the claim. | $0.00 | $59.93 | $0.00 | $59.93 |
| 201908061644847 | 08/08/2019 | | | 07/01/2019 | 07/31/2019 | No caregiver was identified on the claim. | $0.00 | $94.63 | $0.00 | $94.63 |
| 201909041705277 | 09/05/2019 | | | 08/01/2019 | 08/31/2019 | No caregiver was identified on the claim. | $0.00 | $94.63 | $0.00 | $94.63 |
| 201910080022834 | 10/10/2019 | | | 09/01/2019 | 09/30/2019 | No caregiver was identified on the claim. | $0.00 | $94.63 | $0.00 | $94.63 |
| 201912100186797 | 12/12/2019 | | | 10/01/2019 | 10/31/2019 | No caregiver was identified on the claim. | $0.00 | $161.01 | $0.00 | $161.01 |
| 201912200215208 | 12/26/2019 | | | 11/01/2019 | 11/30/2019 | No caregiver was identified on the claim. | $0.00 | $161.01 | $0.00 | $161.01 |
| 202001280307258 | 01/30/2020 | | | 12/01/2019 | 12/31/2019 | No caregiver was identified on the claim. | $0.00 | $161.01 | $0.00 | $161.01 |
| 202002180363267 | 02/20/2020 | | | 01/01/2020 | 01/31/2020 | No caregiver was identified on the claim. | $0.00 | $161.01 | $0.00 | $161.01 |
| 202003100429091 | 03/12/2020 | | | 02/01/2020 | 02/29/2020 | No caregiver was identified on the claim. | $0.00 | $161.01 | $0.00 | $161.01 |
| 202007280756017 | 07/30/2020 | | | 04/01/2020 | 04/09/2020 | No caregiver was identified on the claim. | $0.00 | $55.03 | $0.00 | $55.03 |
| 202007280756017 | 07/30/2020 | | | 04/18/2020 | 04/19/2020 | No caregiver was identified on the claim. | $0.00 | $12.23 | $0.00 | $12.23 |
| 202009010848610 | 09/03/2020 | | | 05/01/2020 | 05/31/2020 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202007280756017 | 07/30/2020 | | | 06/01/2020 | 06/30/2020 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202008180814117 | 08/20/2020 | | | 07/01/2020 | 07/31/2020 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202009080859355 | 09/10/2020 | | | 08/01/2020 | 08/31/2020 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202010130967482 | 10/15/2020 | | | 09/01/2020 | 09/14/2020 | No caregiver was identified on the claim. | $0.00 | $73.38 | $0.00 | $73.38 |
| 202010130967482 | 10/15/2020 | | | 09/22/2020 | 09/30/2020 | No caregiver was identified on the claim. | $0.00 | $55.03 | $0.00 | $55.03 |
| 202011091035612 | 11/12/2020 | | | 10/01/2020 | 10/31/2020 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202101121192091 | 01/14/2021 | | | 12/01/2020 | 12/31/2020 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202102091263550 | 02/11/2021 | | | 01/01/2021 | 01/31/2021 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202104061408291 | 04/08/2021 | | | 02/01/2021 | 02/28/2021 | No caregiver was identified on the claim. | $0.00 | $183.44 | $0.00 | $183.44 |
| 202006090644742 | 06/11/2020 | | | 05/19/2020 | 05/31/2020 | No caregiver was identified on the claim. | $0.00 | $252.17 | $0.00 | $252.17 |
| 202007140723263 | 07/16/2020 | | | 06/01/2020 | 06/30/2020 | No caregiver was identified on the claim. | $0.00 | $601.32 | $0.00 | $601.32 |
| 202008110797983 | 08/13/2020 | | | 07/01/2020 | 07/31/2020 | No caregiver was identified on the claim. | $0.00 | $601.32 | $0.00 | $601.32 |
| 202009080859355 | 09/10/2020 | | | 08/01/2020 | 08/31/2020 | No caregiver was identified on the claim. | $0.00 | $601.32 | $0.00 | $601.32 |
| 202010130967482 | 10/15/2020 | | | 09/01/2020 | 09/27/2020 | No caregiver was identified on the claim. | $0.00 | $541.19 | $0.00 | $541.19 |
| 202011171053297 | 11/19/2020 | | | 10/18/2020 | 10/31/2020 | No caregiver was identified on the claim. | $0.00 | $271.57 | $0.00 | $271.57 |
| 202101121192091 | 01/14/2021 | | | 12/01/2020 | 12/31/2020 | No caregiver was identified on the claim. | $0.00 | $601.32 | $0.00 | $601.32 |
| 202102091263550 | 02/11/2021 | | | 01/01/2021 | 01/31/2021 | No caregiver was identified on the claim. | $0.00 | $601.32 | $0.00 | $601.32 |
| 202103091337721 | 03/11/2021 | | | 02/01/2021 | 02/28/2021 | No caregiver was identified on the claim. | $0.00 | $601.32 | $0.00 | $601.32 |
| 202104061408291 | 04/08/2021 | | | 03/01/2021 | 03/31/2021 | No caregiver was identified on the claim. | $0.00 | $610.51 | $0.00 | $610.51 |
| 202105111491337 | 05/13/2021 | | | 04/01/2021 | 04/30/2021 | Agency did not meet the definition of a Home Help agency provider. | $0.00 | $0.00 | $211.69 | $211.69 |

Prepared by Malik Thomas (MDHHS)

| Warrant ID | Warrant Date | Beneficiary ID | Beneficiary Name | Service Begin Date | Service End Date | Notes | Hospitalization Overpayment | Non-Enrolled Caregiver Overpayment | Rate Adjustment Overpayment | Total Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|
| 202106081561353 | 06/10/2021 | | | 05/01/2021 | 05/31/2021 | No caregiver was identified on the claim. | $0.00 | $610.51 | $0.00 | $610.51 |
| 202107131643334 | 07/15/2021 | | | 06/01/2021 | 06/29/2021 | No caregiver was identified on the claim. | $0.00 | $590.16 | $0.00 | $590.16 |
| 202203012226101 | 03/03/2022 | | | 01/01/2022 | 01/31/2022 | No caregiver was identified on the claim. | $0.00 | $1,322.11 | $0.00 | $1,322.11 |
| 202203082253557 | 03/10/2022 | | | 02/01/2022 | 02/28/2022 | No caregiver was identified on the claim. | $0.00 | $1,322.11 | $0.00 | $1,322.11 |
| 202204122340254 | 04/14/2022 | | | 03/01/2022 | 03/31/2022 | No caregiver was identified on the claim. | $0.00 | $1,322.11 | $0.00 | $1,322.11 |
| 202205102414587 | 05/12/2022 | | | 04/01/2022 | 04/30/2022 | No caregiver was identified on the claim. | $0.00 | $1,378.43 | $0.00 | $1,378.43 |
| 202206072487475 | 06/09/2022 | | | 05/01/2022 | 05/31/2022 | No caregiver was identified on the claim. | $0.00 | $1,378.43 | $0.00 | $1,378.43 |
| 202207122578218 | 07/14/2022 | | | 06/01/2022 | 06/30/2022 | No caregiver was identified on the claim. | $0.00 | $1,378.30 | $0.00 | $1,378.30 |
| 202208092652049 | 08/11/2022 | | | 07/01/2022 | 07/06/2022 | No caregiver was identified on the claim. | $0.00 | $266.79 | $0.00 | $266.79 |
| 202209062710393 | 09/08/2022 | | | 08/04/2022 | 08/31/2022 | No caregiver was identified on the claim. | $0.00 | $1,245.03 | $0.00 | $1,245.03 |
| 202210112839770 | 10/13/2022 | | | 09/01/2022 | 09/26/2022 | DMC Health 9/12/2022 to 9/16/2022. No caregiver was identified on the claim. | $194.81 | $999.83 | $0.00 | $1,194.64 |
| 202211152926501 | 11/17/2022 | | | 10/01/2022 | 10/31/2022 | No caregiver was identified on the claim. | $0.00 | $1,378.43 | $0.00 | $1,378.43 |
| 202212062986143 | 12/08/2022 | | | 11/01/2022 | 11/30/2022 | No caregiver was identified on the claim. | $0.00 | $1,378.43 | $0.00 | $1,378.43 |
| 201801090204443 | 01/11/2018 | | | 12/01/2017 | 12/31/2017 | No caregiver was identified on the claim. | $0.00 | $524.39 | $0.00 | $524.39 |
| 201802060274048 | 02/08/2018 | | | 01/01/2018 | 01/31/2018 | No caregiver was identified on the claim. | $0.00 | $524.39 | $0.00 | $524.39 |
| 201803060343453 | 03/08/2018 | | | 02/01/2018 | 02/28/2018 | No caregiver was identified on the claim. | $0.00 | $524.39 | $0.00 | $524.39 |
| 201804030416387 | 04/05/2018 | | | 03/01/2018 | 03/31/2018 | No caregiver was identified on the claim. | $0.00 | $524.39 | $0.00 | $524.39 |
| 201805080489701 | 05/10/2018 | | | 04/01/2018 | 04/30/2018 | No caregiver was identified on the claim. | $0.00 | $498.26 | $0.00 | $498.26 |
| 201806050574375 | 06/07/2018 | | | 05/01/2018 | 05/31/2018 | No caregiver was identified on the claim. | $0.00 | $498.26 | $0.00 | $498.26 |
| 201807100659212 | 07/12/2018 | | | 06/01/2018 | 06/30/2018 | No caregiver was identified on the claim. | $0.00 | $498.26 | $0.00 | $498.26 |
| 201808070729790 | 08/09/2018 | | | 07/01/2018 | 07/31/2018 | No caregiver was identified on the claim. | $0.00 | $498.26 | $0.00 | $498.26 |
| 201809040786762 | 09/06/2018 | | | 08/01/2018 | 08/31/2018 | No caregiver was identified on the claim. | $0.00 | $498.26 | $0.00 | $498.26 |
| 201810020864287 | 10/04/2018 | | | 09/01/2018 | 09/30/2018 | No caregiver was identified on the claim. | $0.00 | $498.26 | $0.00 | $498.26 |
| 201906111497794 | 06/13/2019 | | | 05/09/2019 | 05/31/2019 | No caregiver was identified on the claim. | $0.00 | $291.73 | $0.00 | $291.73 |
| 201907021560131 | 07/05/2019 | | | 06/01/2019 | 06/30/2019 | No caregiver was identified on the claim. | $0.00 | $393.20 | $0.00 | $393.20 |
| 201908061644847 | 08/08/2019 | | | 07/01/2019 | 07/31/2019 | No caregiver was identified on the claim. | $0.00 | $393.20 | $0.00 | $393.20 |
| 201909101734702 | 09/12/2019 | | | 08/01/2019 | 08/31/2019 | No caregiver was identified on the claim. | $0.00 | $393.20 | $0.00 | $393.20 |
| 201910080022834 | 10/10/2019 | | | 09/01/2019 | 09/30/2019 | No caregiver was identified on the claim. | $0.00 | $561.71 | $0.00 | $561.71 |
| 201911220138782 | 11/26/2019 | | | 10/01/2019 | 10/31/2019 | No caregiver was identified on the claim. | $0.00 | $668.93 | $0.00 | $668.93 |
| 201912170205307 | 12/19/2019 | | | 11/01/2019 | 11/30/2019 | No caregiver was identified on the claim. | $0.00 | $669.06 | $0.00 | $669.06 |
| 202001210286786 | 01/23/2020 | | | 12/01/2019 | 12/31/2019 | No caregiver was identified on the claim. | $0.00 | $669.06 | $0.00 | $669.06 |
| 202002110350926 | 02/13/2020 | | | 01/01/2020 | 01/31/2020 | No caregiver was identified on the claim. | $0.00 | $669.06 | $0.00 | $669.06 |
| 202003170444271 | 03/19/2020 | | | 02/01/2020 | 02/29/2020 | No caregiver was identified on the claim. | $0.00 | $669.06 | $0.00 | $669.06 |
| 202005120582023 | 05/14/2020 | | | 04/01/2020 | 04/30/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202006160658455 | 06/18/2020 | | | 05/01/2020 | 05/31/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202007140723263 | 07/16/2020 | | | 06/01/2020 | 06/30/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202008110797983 | 08/13/2020 | | | 07/01/2020 | 07/31/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202009220908232 | 09/24/2020 | | | 08/01/2020 | 08/31/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202010130967482 | 10/15/2020 | | | 09/01/2020 | 09/30/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202011091035612 | 11/12/2020 | | | 10/01/2020 | 10/31/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202012151123973 | 12/17/2020 | | | 11/01/2020 | 11/30/2020 | Direct Caregiver was not enrolled in CHAMPS during claim month. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202101121192091 | 01/14/2021 | | | 12/01/2020 | 12/31/2020 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202102091263550 | 02/11/2021 | | | 01/01/2021 | 01/31/2021 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |

| Warrant ID | Warrant Date | Beneficiary ID | Beneficiary Name | Service Begin Date | Service End Date | Notes | Hospitalization Overpayment | Non-Enrolled Caregiver Overpayment | Rate Adjustment Overpayment | Total Overpayment |
|---|---|---|---|---|---|---|---|---|---|---|
| 202103091337721 | 03/11/2021 | | | 02/01/2021 | 02/28/2021 | No caregiver was identified on the claim. | $0.00 | $762.27 | $0.00 | $762.27 |
| 202104061408291 | 04/08/2021 | | | 03/01/2021 | 03/31/2021 | No caregiver was identified on the claim. | $0.00 | $773.92 | $0.00 | $773.92 |
| 202105111491337 | 05/13/2021 | | | 04/01/2021 | 04/30/2021 | Agency did not meet the definition of a Home Help agency provider. | $0.00 | $0.00 | $268.38 | $268.38 |
| 202106081561353 | 06/10/2021 | | | 05/01/2021 | 05/31/2021 | No caregiver was identified on the claim. | $0.00 | $773.92 | $0.00 | $773.92 |
| 202107131643334 | 07/15/2021 | | | 06/01/2021 | 06/30/2021 | No caregiver was identified on the claim. | $0.00 | $773.92 | $0.00 | $773.92 |
| 202108101714564 | 08/12/2021 | | | 07/01/2021 | 07/31/2021 | No caregiver was identified on the claim. | $0.00 | $773.92 | $0.00 | $773.92 |
| 202109071777780 | 09/09/2021 | | | 08/01/2021 | 08/31/2021 | No caregiver was identified on the claim. | $0.00 | $773.92 | $0.00 | $773.92 |
| 2021101218813358 | 10/14/2021 | | | 09/01/2021 | 09/15/2021 | Henry Ford Health 9/15/2021 to 9/17/2021. No caregiver was identified on the claim. | $30.88 | $432.34 | $0.00 | $463.22 |
| 2021101218813358 | 10/14/2021 | | | 09/19/2021 | 09/30/2021 | No caregiver was identified on the claim. | $0.00 | $370.57 | $0.00 | $370.57 |
| 202111091944259 | 11/12/2021 | | | 10/01/2021 | 10/31/2021 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202112142034690 | 12/16/2021 | | | 11/01/2021 | 11/30/2021 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202202082179181 | 02/10/2022 | | | 01/01/2022 | 01/31/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202203082253557 | 03/10/2022 | | | 02/01/2022 | 02/28/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202204122340254 | 04/14/2022 | | | 03/01/2022 | 03/31/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202205102414587 | 05/12/2022 | | | 04/01/2022 | 04/30/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202206072487475 | 06/09/2022 | | | 05/01/2022 | 05/31/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202207192593120 | 07/21/2022 | | | 06/01/2022 | 06/30/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202208162665963 | 08/18/2022 | | | 07/01/2022 | 07/31/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202209062710393 | 09/08/2022 | | | 08/01/2022 | 08/31/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202210112839770 | 10/13/2022 | | | 09/01/2022 | 09/30/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 202211152926501 | 11/17/2022 | | | 10/01/2022 | 10/31/2022 | No caregiver was identified on the claim. | $0.00 | $931.91 | $0.00 | $931.91 |
| 201905071407839 | 05/09/2019 | | | 04/18/2019 | 04/30/2019 | No caregiver was identified on the claim. | $0.00 | $193.99 | $0.00 | $193.99 |
| 201906041484450 | 06/06/2019 | | | 05/01/2019 | 05/31/2019 | No caregiver was identified on the claim. | $0.00 | $447.66 | $0.00 | $447.66 |
| 201907021560131 | 07/05/2019 | | | 06/01/2019 | 06/30/2019 | No caregiver was identified on the claim. | $0.00 | $447.66 | $0.00 | $447.66 |
| 201908131660742 | 08/15/2019 | | | 07/01/2019 | 07/31/2019 | No caregiver was identified on the claim. | $0.00 | $447.66 | $0.00 | $447.66 |
| 201909041705277 | 09/05/2019 | | | 08/01/2019 | 08/13/2019 | No caregiver was identified on the claim. | $0.00 | $187.71 | $0.00 | $187.71 |
| | | | | | | **Total Overpayment** | **$4,054.14** | **$78,312.20** | **$480.07** | **$82,846.41** |

Prepared by Malik_Thomas (MDHHS)

# Exhibit 5

**OVERVIEW**

Intentional Program Violation (IPV) occurs when the client, individual caregiver, agency provider, or client's authorized representative intentionally make a false or misleading statement, hides, or misrepresents/withholds facts to receive or to continue receiving benefits. IPV is considered fraud and must be reported to the Michigan Department of Health and Human Services (MDHHS) Office of Inspector General (OIG).

**Client Suspected of Intentional Program Violation (IPV)**

Suspected IPV means an overpayment exists when all three of the following conditions occur:

- The client (or legally responsible party) **intentionally** failed to report information or gave incomplete or inaccurate information needed to make a correct benefit determination.

- The client was clearly instructed regarding his or her reporting responsibilities to the Department.

   **Note:** A signed DHS-390, Adult Services Application instructs the client of their reporting responsibilities. The adult services worker (ASW) must reiterate the client's responsibility to report any changes **within 10 business days** during the client case reviews.

- The client has no apparent physical or mental impairment that limits his or her understanding or ability to fulfill their reporting responsibilities.

An IPV is suspected when there is credible evidence that the client has **intentionally** withheld or misrepresented information for the **purpose** of establishing, maintaining, increasing, or preventing reduction of program benefits or eligibility. In such cases where these conditions exist, the ASW must make a fraud referral to the OIG.

**Example:** The client (or legally responsible party) intentionally reports inaccurate or incomplete information to conduct an accurate comprehensive assessment of need for Home Help services.

**No recoupment action is taken on cases that are referred to OIG for investigation, while the investigation is being conducted.**

**Individual Caregiver or Agency Provider Suspected of Intentional Program Violation (IPV)**

A suspected individual caregiver or agency provider IPV is an overpayment caused by an individual caregiver or agency provider's intentional false billings or intentional inaccurate statements. Examples of individual caregiver or agency provider overpayment that may be an IPV are:

- Failing to bill correctly (intentionally submitting an incorrect invoice).

- Receiving payment for hours when the client was unavailable, such as, but not limited to, hospitalizations, nursing home, or AFC stays.

- Receiving payment for hours when the individual caregiver or agency provider was unavailable and did not provide care.

**Example:** Individual caregiver or agency provider receives and cashes a single party warrant for a time period they were unavailable and did **not** provide care.

An intentional program violation is suspected when there is credible evidence that the individual caregiver or agency provider has intentionally withheld or misrepresented information for the purpose of establishing, maintaining, increasing, or preventing reduction of program benefits or eligibility.

**No recoupment action is taken on cases that are referred to OIG for investigation, while the investigation is being conducted.**

**OIG REFERRAL CRITERIA**

When an adult services worker believes fraud has occurred within the Home Help program, the ASW must make a referral to the

Office of Inspector General (OIG). Prudent judgement should be used in evaluating an overpayment for a suspected IPV.

Consider the following questions when reviewing the case for fraud:

- Does the case record indicate that department staff advised the client of his or her rights and responsibilities?

  **Note:** The DHS-390 instructs clients of their rights and responsibilities; however, the ASW must remind the client, individual caregiver, or agency provider of his or her reporting responsibilities at each case review.

- Does the case contact in MiAIMS reflect the client's acknowledgement of these rights and responsibilities?

- Did the client, individual caregiver, or agency provider neglect to report timely when required to do so after being informed of their responsibility to report?

- Did the client, individual caregiver, or agency provider make false or misleading statements?

- Does the client, individual caregiver, or agency provider error meet suspected IPV criteria?

**Home Help Fraud/IPV Scenarios**

The following scenarios are provided as guidance for when a Home Help fraud referral should be made to the Office of Inspector General:

- Client alters or forges the DHS-54A, Medical Needs form in order to become eligible for services.

- Client forges the individual caregiver signature on a dual-party warrant and services were **not** provided.

  **Note:** If the client forges the individual caregiver's signature on a dual-party warrant and services **were** provided, this becomes a civil matter and should **not** be referred to OIG.

- Client, individual caregiver, or agency provider has an arrangement to split the warrant and services were **not** provided.

- Individual caregiver reports earnings indicated on their W-2 are inaccurate and the ASW discovers services were not provided.

- Agency provider reports earnings indicated on their 1099 are inaccurate and the ASW discovers services were not provided.

**Example:** Individual caregiver asserts they ended services on a specific date, but the warrants continued to be cashed under their name.

- Client fails to disclose changes that would affect their eligibility or cost of care and was clearly instructed regarding their reporting responsibilities.

**Example:** Client gets married and the spouse is able and available to provide care.

**Example:** Client's health improves and they fail to report the change in care needs.

**Example:** Client fails to disclose others living in the home which would affect the proration of instrumental activities of daily living (IADLs).

- The individual caregiver or agency provider cashes the warrant when the client was unavailable.

**Example:** Client was admitted into a nursing facility and the individual caregiver or agency provider continued to cash the warrant(s).

- The individual caregiver or agency provider continues to receive and cash warrants after the client's death.

- A pattern exists of continued improper billing even after the ASW has repeatedly reviewed reporting and billing procedures with the client, individual caregiver, or agency provider.

**Example:** An individual caregiver or agency provider has multiple instances of billing for services during a client's hospitalization even after discussion with the ASW about proper billing procedures and recoupments for overpayment.

If the ASW questions the appropriateness of a referral, it should be forwarded to OIG who will determine whether to investigate.

## Making a Referral to OIG

The ASW must refer all suspected cases of fraud/IPV in the Home Help program to OIG using the DHS-1131, Medicaid Services Fraud Intake Form. Complete the DHS-1131 and provide copies of all supporting documentation that would assist in the investigation.

Email the DHS-1131 and supporting documentation to the OIG Fraud Complaint mailbox at:

MDHHS-OIG-InvestigativeSupport@michigan.gov

The adult services worker will be notified if a referral is denied for investigation.

**No recoupment action is taken on cases that are referred to OIG for investigation, while the investigation is being conducted.**

## Threshold

Individual caregiver or agency provider fraud has **no** threshold and should be reported to OIG. An individual caregiver or agency provider IPV overpayment of $500 or greater is a felony.

Client suspected IPV has a threshold of $500. A referral to OIG must be made if the total overpayment is **less** than $500, **and** one of the following conditions exists:

- The client has a previous IPV, **or**
- The client has had at least two client errors previously, **or**
- The alleged fraud is committed by a state government employee.

If the overpayment is less than $500 and does not meet the conditions above, refer to ASM 165, Overpayment and Recoupment Process.

## OIG RESPONSIBILITIES

The MDHHS Office of Inspector General is the sole contact point for all fraud referrals pertaining to the Home Help program and the investigation will be assigned based on the investigation type (client, individual caregiver, or agency provider).

Referrals are made to the Attorney General (AG) Medicaid Healthcare Fraud Division for prosecution when there is credible evidence of fraud that exceeds $4000.

### Action Taken by OIG

Within 12 months OIG will:

- Refer suspected IPV cases that meet the criteria for prosecution to the prosecuting attorney or AG's office.

- Refer suspected IPV cases that meet the criteria for IPV administrative hearings to the Michigan Office of Administrative Hearings and Rules (MOAHR).

- Return all non-IPV client cases to the adult services worker to initiate recoupment.

- Pursue recoupment for non-IPV individual caregiver or agency provider cases. A DHS-566, Recoupment Letter, is sent to the individual caregiver or agency provider with a copy to MDHHS Medicaid Collections Unit and the adult services worker. **No further action is required by the adult services worker.**

   **Note:** OIG will not send a copy of the recoupment letter to the local county MDHHS office if the case is closed.

**IPV Hearings**

OIG shall request an IPV hearing when there is no signed DHS-4350, Intentional Program Violation Repayment Agreement obtained and correspondence to the client is returned as undeliverable, or a new address is located.

The Department may request a hearing to:

- Establish an intentional program violation against the client.
- Establish a collectable debt (client debt).

**HOME HELP INDIVIDUAL CAREGIVER OR AGENCY PROVIDER SUSPENSION**

Pursuant to federal law, codified at 42 CFR 455.23, a state Medicaid agency must suspend all Medicaid payments to an

individual caregiver or agency provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual caregiver, agency provider, or entity, unless there is good cause not to suspend.

The MDHHS OIG will notify the Home Help Policy Section when a credible allegation of fraud is evident against a Home Help individual caregiver or agency provider. The Home Help Policy Section will contact the local MDHHS office and instruct the ASW to suspend the payment authorization(s). The MDHHS Provider Enrollment unit will be notified to terminate or suspend the individual caregiver, agency provider, or agency caregiver eligibility in CHAMPS. OIG will inform the local office and the policy section if the individual caregiver, agency provider, or agency caregiver suspension is lifted.

**RECOUPMENT**

**No recoupment action should be taken on cases that are referred to OIG for investigation until notified**.

OIG will notify the referring adult services worker of non-IPV substantiated cases of client fraud. The ASW will be responsible for initiating the recoupment.

OIG will initiate recoupment on individual caregiver or agency provider fraud cases investigated but denied for prosecution. OIG will send the individual caregiver or agency provider a recoupment letter and forward a copy to the MDHHS Medicaid Collections Unit for recoupment. **No further action is needed by the adult services worker.**

**FRONT END ELIGIBILITY (FEE)**

The Office of Inspector General established the Front End Eligibility (FEE) program in response to the need for fraud prevention. The goal of the FEE program is to obtain and maintain a partnership between the MDHHS local office staff early in the eligibility determination process in order to reduce errors.

**FEE Referral**

The adult services worker may request a pre-eligibility investigation by the OIG regulation agent when it is believed the client is intentionally misrepresenting the need for Home Help services.

Referrals for FEE are also accepted for open cases when it is believed a client is misrepresenting the need for continued care.

Examples of an appropriate FEE referral for Home Help services would be the following:

- A Home Help case is denied due to a spouse (responsible relative who is **able** and **available**) in the home and the client later reapplies claiming the spouse has moved out of the home.

- The ASW suspects the client and individual caregiver, agency provider, or agency caregiver of Home Help are married to one another and they are not disclosing their marital status.

- The client indicates they live alone either verbally or on the DHS-390, Adult Services Application, but Bridges shows others living in the home.

- Client's medical condition improves, and fewer services are needed, but the client, individual caregiver, or agency provider fails to report the change.

### *Components of a Quality FEE Referral*

The following are components of a quality FEE referral:

- The case should be active or pending for benefits.
- Ensure that policy supports why the client may not be eligible.
- Provide accurate case demographics.
- Attach all supporting documentation.

To make a FEE referral from the Inside MDHHS website, use the following path: Inside MDHHS > About > Offices and Departments > Office of Inspector General > FEE Referral/Instructions, and complete the FEE Referral Form.

OIG regulation agents must complete the investigation within 10-business days and respond to staff with their findings. Investigations are completed prior to opening the case or recertifying the applicant for benefits.

**CONTACT**

For questions contact MDHHS-Home-Help-Policy@michigan.gov.

# Exhibit 6

| STATE OF MICHIGAN<br>**30th** JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT | DEFAULT REQUEST,<br>ENTRY, AND JUDGMENT<br>(SUM CERTAIN) | CASE NO. and JUDGE<br>24-563-CZ<br><br>Hon. Wanda M. Stokes |
|---|---|---|

| Court address | Court telephone no. |
|---|---|
| Mason Historical Courthouse 315 S. Jefferson St, Mason, MI 48854 | 517-483-6500 |

| Plaintiff's name, address, and telephone no.<br><br>State of Michigan, Department of Health and Human Services, Office of Inspector General | v | Defendant's name, address, and telephone no.<br><br>Jewels Home Health Care Service and Kellan Sandifer<br>29600 Franklin Rd Apt 19<br>Southfield, MI 48034<br>(248) 802-1605<br>jewelshomehealthcare@gmail.com |
|---|---|---|
| Plaintiff's attorney, bar no., address, and telephone no.<br><br>David H. Goodkin (P69338)<br>Michigan Department of Attorney General<br>Revenue and Tax Division<br>P.O. Box 30754<br>Lansing, MI 48909 | | Defendant's attorney, bar no., address, and telephone no. |

USE NOTE: Plaintiff must complete the Request and the Default Judgment before filing with the court.

**REQUEST**

1. I request a default entry against <u>Jewels Home Health Care Service and Kellan Sandifer</u> for failure to appear.

2. The claim against the defaulted party is for a sum certain or for a sum, which by computation can be made certain. I request judgment for: Damages: $ <u>248,539.23</u> Costs: $ <u>170.00</u> Attorney fee/Other: $ <u>180.00</u> Payments/Credits: $ - <u>0.00</u> Total judgment: $ <u>248,889.23</u> .

3. The amount requested for damages is not greater than the amount stated in the complaint.

4. The defaulted party is not an infant or incompetent person.

5. ☐ It is unknown whether the defaulted party is in the military service. ☑ The defaulted party is not in the military service. ☐ The defaulted party is in the military but there has been notice of pendency of the action and adequate time and opportunity to appear and defend has been provided. Attached, as appropriate, is a waiver of rights and protections provided under the Servicemembers Civil Relief Act. Facts upon which this conclusion is based are: (Specify)

6. This request is made on my personal knowledge and, if sworn as a witness, I can testify competently to the facts in this request.

I declare under the penalties of perjury that this request has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_____
Plaintiff/Attorney signature

Subscribed and sworn to before me on <u>10-01-2024</u>
Date

_____
Deputy clerk/Notary public signature

My commission expires on <u>10-01-2028</u>
<u>Daniel A. Kirgis</u>
Name (type or print)

Notary public, State of Michigan, County of _____ . ☐ Acting in the County of _____ .
☐ This notarial act was performed using an electronic notarization system or a remote electronic notarization platform.

Approved, SCAO<br>Form MC 07a, Rev. 7/22<br>MCL 32.517, MCL 600.2441, MCL 600.5759, MCL 600.6013,<br>50 USC 3931, MCR 2.603<br>Page 1 of 2

Distribute form to:
Court
Plaintiff
All other parties

Case No. _24-563-CZ_

**DEFAULT ENTRY**   The default of the party named above for failure to appear is entered.

*Lisa Strong*   10/4/24
Court clerk signature and date

**DEFAULT JUDGMENT**   **IT IS ORDERED** this judgment is granted in favor of the plaintiff(s) as follows:

*Attach bill of costs if statutory limit is exceeded.

Damages: $ _248,539.23_   Costs: $ _170.00_   Attorney fee/Other: $ _180.00_   Payments/Credits: $ - _0.00_

Total judgment: $ _248,889.23_

This judgment will earn interest at statutory rates, computed from the filing date of the complaint.

Judgment interest accrued thus far is $ _2,122.72_ and is based on: If needed, attach separate sheet.

☑ the statutory rate of           _4.359_ % from _07/23/2024_ to _09/30/2024_ .

☐ the statutory 6-month rate(s) of _____ % from _____ to _____ .

If personal service is made, this default judgment becomes a final judgment after 21 days unless a motion to set aside is filed.

WANDA M. STOKES   10/4/24
Court clerk/Judge signature and date

Use note: The party who sought the default and default judgment is responsible for serving all parties in accordance with MCR 2.603(A)(2) and MCR 2.603(B)(4).   **CERTIFICATE OF MAILING**

I served a copy of this default request, entry, and judgment on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3). I declare under the penalties of perjury that this certificate of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_____   _____
Date                Signature

# Exhibit 7

Original - Court **JUDGE WANDA M. STOKES** 2nd copy - Plaintiff
1st copy - Defendant                 3rd copy - Return

| | | |
|---|---|---|
| **STATE OF MICHIGAN** 30th | **SUMMONS** | **CASE NO.** 24-297-CZ |
| **JUDICIAL DISTRICT** | | |
| **JUDICIAL CIRCUIT** | | |
| **COUNTY** | | |

**Court address**                                                                 **Court telephone no.**

Veterans Memorial Courthouse, 313 W, Kalamazoo St., Lansing, MI 48901                (517) 483-6500

| Plaintiff's name, address, and telephone no. | | Defendant's name, address, and telephone no. |
|---|---|---|
| State of Michigan, Department of Health & Human Services, Office of Inspector General | v | Jewels Home Health Care Service 14005 Roselawn St Detroit, MI 48238 (248) 802-1605 jewelshomehealthcare@gmail.com |
| Plaintiff's attorney, bar no., address, and telephone no. | | |
| David H. Goodkin (P69338) Michigan Department of Attorney General PO Box 30754 Lansing, MI 48909 (517) 335-7584 | | Kellan Sandifer 29600 Franklin Rd Apt 19 Southfield, MI 48034 (248) 802-1605 jewelshomehealthcare@gmail.com |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**

☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.                         **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:

1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date | Expiration date* | Court clerk |
|---|---|---|
| APR 1 7 2024 | JUL 1 7 2024 | ANANDA WORDEN |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01  (3/23)  **SUMMONS**                                      MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**Summons** (3/23)

Case No. 24-_297_-CZ

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served ☐ personally ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached) a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee | Miles traveled | Fee | | Signature |
|---|---|---|---|---|
| $ | | $ | | |
| Incorrect address fee | Miles traveled | Fee | TOTAL FEE | Name (type or print) |
| $ | | $ | $ | |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____.
Attachments (if any)                    Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
CIRCUIT COURT FOR THE 30TH JUDICIAL CIRCUIT
INGHAM COUNTY

STATE OF MICHIGAN, DEPARTMENT
OF HEALTH AND HUMAN SERVICES,
OFFICE OF INSPECTOR GENERAL,

      Plaintiff,

v

JEWELS HOME HEALTH CARE SERVICE,
LLC and KELLAN SANDIFER,

      Defendants.

No. 24– *297* –CZ

HON.

**JUDGE WANDA M. STOKES**

---

David H. Goodkin (P69338)
Attorney for Plaintiff
Michigan Department of Attorney General
Revenue and Tax Division
P.O. Box 30754
Lansing, MI 48909
(517) 335–7584
GoodkinD@michigan.gov

Jewels Home Health Care Service
(In Pro Per)
14005 Roselawn St
Detroit, MI 48238
(248) 802–1605
jewelshomehealthcare@gmail.com

Kellan Sandifer (In Pro Per)
29600 Franklin Rd Apt 19
Southfield, MI 48034
(248) 802–1605
jewelshomehealthcare@gmail.com

---

There is no pending or resolved civil action arising out of
the transaction or occurrence alleged in the Complaint.

**COMPLAINT FOR MONEY JUDGMENT AND JUDGMENT UPON AGENCY
RECORD**

The Michigan Department of Health and Human Services (MDHHS), Office

of Inspector General, by and through its attorney, Assistant Attorney General

David H. Goodkin, for its Complaint for Money Judgment and Judgment upon Agency Record against Defendants, states as follows:

## PARTIES

1.     Plaintiff is the Michigan Department of Health and Human Services, Office of Inspector General (MDHHS OIG) and is appointed by statute to prevent, detect, and investigate fraud, waste, and abuse within Michigan's health services programs such as the Medical Assistance Program (Medicaid) established under Title XIX of the Social Security Act.  MCL 333.26368; MCL 400.227; 42 USC 1396 *et seq.*; 1939 PA 280 (MCL 400.1 *et seq.*).

2.     Defendant, Jewels Home Health Care Service, is enrolled with the MDHHS as a Home Help Agency (Ex A, Enrollment Contracts), with its resident agent located at 14005 Roselawn St, Detroit, MI 48238.  (Ex B, CHAMPS Ownership Information.)

3.     Defendant, Kellan Sandifer, is the individual owner of Jewels Home Health Care Service, and Kellan Sandifer's most recent address used with the state is 29600 Franklin Rd Apt 19, Southfield, MI 48034.  (Ex B.)

## JURISDICTION AND VENUE

4.     Jurisdiction in this Court is appropriate according to MCL 600.701 and MCL 600.711 and because the amount in controversy exceeds $25,000.00.

5.     Venue is appropriate in Ingham County as it is the seat of state government.  MCL 600.1631(a).  Also, as this is an action brought by the Attorney

General in the name of the State (on behalf of a State agency), venue is appropriate in Ingham County.  MCL 14.102.

## GENERAL ALLEGATIONS

6.      Plaintiff incorporates its allegations contained in paragraphs 1 through 5 as though expressly re-stated herein.

7.      Medicaid is entirely funded by state and federal taxes.

8.      Among other things, a provider receiving Michigan Medicaid payments must repay, return, restore, or reimburse an overpayment, and failure to do so constitutes a conversion of the money by the provider.  MCL 400.111b(16).

9.      The State of Michigan has one year from the date of discovering an overpayment before it must refund the federal portion of the overpayment to the Federal Government.  42 USC 1396b(d)(2)(C).  The State must then attempt to recoup the Medicaid Overpayment from the entity or entities that wrongly received it.

10.     Providers, including a Home Help Agency like Defendant, must enter into agreements upon enrolling in the Medicaid program.  MCL 400.111b(4).

11.     A "provider," as defined under the agency statute, is "an individual, sole proprietorship, partnership, association, corporation, institution, agency, or other legal entity who has entered into an agreement of enrollment specified by the director under section 111b(4)."  MCL 400.105(4).

12.     Providers bear the burden of proving entitlement to Medicaid reimbursement.  *Prechel v Dep't of Social Servs*, 186 Mich App 547, 549 (1990).

3

13.     As authorized under MCL 333.26368, MCL 400.111a, and
MCL 400.111b, Plaintiff reviewed Defendant's Medicaid claims submitted between
December 1, 2017, through November 30, 2022, case number INV–2023–000500,
and found an overpayment in the amount of $82,846.41. (Ex C, Overpayment
Notice Letters.)

14.     Defendant Jewels Home Health Care Service was given an opportunity
to appeal the overpayment determination, consistent with MCL 400.111c(1)(b).
(Id. at p 2, "If you disagree with these findings, you may request an Administrative
Hearing or an Internal Conference as set forth in the 1979 Administrative Code
R.400.3401 et seq.") The details as to how to take either appeal route was then
spelled out on that page, including a 30-day time limit for either option. (Ex C.)

15.     Defendant Jewels Home Health Care Service did not request an
internal conference nor an appeal and did not submit any additional documentation.

16.     Because Defendant did not request an administrative hearing or an
internal conference the adverse decision in the letter, which was confirmed as
delivered to Defendant on November 30, 2023, became "final" under Mich Admin
Code R 400.3404(3).

17.     Under the doctrine of exhaustion of administrative remedies, where
there is an avenue for an administrative remedy provided, that avenue must be
taken before a court may review a petitioner's challenge to an administrative
determination. Until that path is taken, a court has no jurisdiction to hear
challenges to that determination. And if the administrative remedy has expired

4

because of a petitioner's inaction, that forever closes any court challenge to that determination, absent specific exceptions to the general doctrine of exhaustion of administrative remedies. *Provincial House, Inc v Department of Social Services*, 167 Mich App 1 (1988).

18.　　As the letter sent to Defendant Jewels Home Health Care Service regarding the adverse action indicated that it would be a final decision after 30 days if Defendant Jewels Home Health Care Service did not contest it, Defendant Jewels Home Health Care Service had notice that the final decision would be effective 30 days after the date of that letter.

19.　　Defendant Jewels Home Health Care Service did not request an administrative hearing and now the time to do so has expired, and thus the amount at issue is not subject to further review. *Dir, Workers Comp Agency v Macdonald's Indus Prods*, 305 Mich App 460, 474 (2014) ("It is well established in Michigan that, assuming competent jurisdiction, a party cannot use a second proceeding to attack a tribunal's decision in a previous proceeding[.]").

**COUNT I – DEFENDANT JEWELS HOME HEALTH CARE SERVICE'S LIABILITY HAS ALREADY BEEN ESTABLISHED IN A FINAL AGENCY DETERMINATION, AND THAT DETERMINATION MAY NO LONGER BE APPEALED (ADMINISTRATIVE AGENCY FINAL ORDER)**

20.　　Plaintiff incorporates and alleges Paragraphs 1 through 19 as though expressly re-stated herein.

21.　　While there was no formal administrative hearing in this case, there was a final administrative determination that allowed Defendant to request an

5

administrative hearing. That administrative action determining the overpayment is no longer subject to an appeal. Defendant had to bring any challenge to that determination in or from that action, as an appeal. She did not, and she cannot bring a second original action nor collaterally attack that administrative determination in a subsequent collection action such as this one. As noted above, under the doctrine of exhaustion of administrative remedies, where the administrative remedy has expired because of a petitioner's inaction, that forever closes any court challenge to that determination, absent specific exceptions to the general doctrine of exhaustion of administrative remedies. *Provincial House.*, 167 Mich App 1 (1988).

22. Res judicata applies to quasi-judicial administrative decisions, *Std Auto Parts Co v Employment Security Comm*, 3 Mich App 561, 570 (1966), but this has currently only been found after the conclusion of an adversarial administrative hearing and there was no such hearing in this case. But defendant's failure to challenge the administrative determination before it became final and unappealable is an administrative determination akin to a default judgment. While there is currently no caselaw directly on point regarding res judicata for an administrative final determination under these circumstances, a close analogy would be how a default judgment is treated. "A default judgment is just as conclusive an adjudication and as binding upon the parties of whatever is essential to support the judgment as one which has been rendered following answer and contest." *Barnes v Jeudevine*, 475 Mich 696, 705; 718 NW2d 311 (2006), citing *Perry & Derrick Co.,*

6

*Inc. v King*, 24 Mich.App. 616, 620, 180 N.W.2d 483 (1970). This is true despite the lack of an actual adversarial proceeding having taken place; there was only the opportunity for one, an opportunity that the opposing party chose not to participate in.

23.     If res judicata applies in this administrative default the same as it would apply in a judicial case default, then pursuant to res judicata, a final judgment rendered on the merits would be conclusive as to the rights of the parties and constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. *Co of Wayne v City of Detroit*, 233 Mich App 275, 277 (1998).

24.     Finally, if res judicata applies in a default the same as an adversary proceeding even where there was not one, then collateral estoppel also applies since "[c]ollateral estoppel applies to unappealed administrative determinations that are adjudicatory in nature and where . . . a method of appeal is provided." (Ex D, *Aquatic Mgmt Servs v Dep't of Envtl Quality*, unpublished opinion per curium of the Court of Appeals, issued December 21, 2010 (Docket No. 292365), p 12, citing *Champion's Auto Ferry, Inc v Public Serv Comm*, 231 Mich App 699, 712 (1998), lv. denied by *Aquatic Mgmt Servs v Dep't of Envtl Quality*, 489 Mich 934 (2011).)

25.     The elements of collateral estoppel are: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel. *Monat v State Farm*

7

*Ins Co*, 469 Mich 679, 683–685 (2004). Here, while there was no judgment because Defendants sought no such review, there was an administrative determination which is now final.

26.     The issue addressed during the administrative process was whether the overpayment was properly determined.

27.     The administrative process involved Defendant Jewels Home Health Care Service, same as in the present matter.

28.     The burden of persuasion in the administrative context was the same as in the present matter.

29.     There has been no change in legal context or new evidence to justify re-opening the review findings.

30.     Defendant Jewels Home Health Care Service had full access to an adjudicatory process and Defendant Jewels Home Health Care Service was afforded its administrative rights; however, Defendant Jewels Home Health Care Service failed to exercise all appellate avenues available, making the Plaintiff's administrative decision a final, non-challengeable decision. (Ex E, *Dock Farish v Dep't of Talent & Econ Dev*, unpublished per curiam opinion of the Court of Appeals, issued December 11, 2018 (Docket No. 341350), p 4.)

31.     Plaintiff must return the overpayment amount to the Federal government within one year of the audit, per 42 USC 1396b(d)(2)(C), and thus has suffered damage as a result of Defendant Jewels Home Health Care Service's failure to repay the Medicaid overpayment amount of $82,846.41.

32.    Plaintiff is entitled to a judgment for money in the amount of $82,846.41.

## COUNT II – BREACH OF CONTRACT.

33.    Plaintiff incorporates and alleges Paragraphs 1 through 19 as though expressly re-stated herein.

34.    The elements of breach of contract are: (1) there was a contract between the parties; (2) the defendant(s) breached the contract; and (3) the plaintiff suffered damages as a result of the breach.  M Civ JI 142.01.

35.    The Enrollment submission is an enforceable, binding contract between Kellan Sandifer and Plaintiff, as he signed the contract, and thus expressly agreed to all provisions, including paragraph 7, through which he states "I agree to comply with the provisions of 42 CFR 455.104, 42 CFR 455.105, 42 CFR 431.107 and Act No. 2870 of the Public Acts of 1939 [The Social Welfare Act], as amended, which state the conditions and requirements under which participation in the Medical Assistance Program is allowed." (Ex A.)  And the Social Welfare Act requires a provider to repay any overpayments received.  MCL 400.111b(16).

36.    Kellan Sandifer breached the agreement because he failed to repay the overpayment in contravention of the terms and conditions outlined in the enrollment submission.

37.    Plaintiff suffered damage in the amount of $82,846.41 by Defendant Kellan Sandifer's breach of contract, which is the outstanding balance on the debt.

9

## COUNT III – DEFENDANT OWNER WAS UNJUSTLY ENRICHED FROM HIS RECEIPT OF MEDICAID BENEFITS TO WHICH HE WAS NOT ELIGIBLE.

38. Plaintiff incorporates and alleges Paragraphs 1 through 19 as though expressly re-stated herein.

39. As sole owner of Jewels Home Health Care Service, and where Medicaid payments constitute the primary, if not sole, income for Jewels Home Health Care Service, Defendant Kellan Sandifer directly benefited from Jewels Home Health Care Service's receipt of, and retention of, the Medicaid overpayment of $82,846.41.

40. It is unfair to Plaintiff for Defendant Kellan Sandifer to retain the benefit of the Medicaid overpayment of $82,846.41.

41. Thus, where Defendant Kellan Sandifer received a benefit from Plaintiff that results in an inequity to Plaintiff by its retention, as Plaintiff must return the overpayment amount to the Federal government within one year of the audit, per 42 USC 1396b(d)(2)(C), the elements for Unjust Enrichment have been met, making Defendant Kellan Sandifer liable to repay the Medicaid overpayment of $82,846.41 to Plaintiff. *Dumas v Auto Club Ins. Ass'n*, 437 Mich 521, 546 (1991).


## COUNT IV – THE CORPORATE VEIL SHOULD BE PIERCED, MAKING KELLAN SANDIFER PERSONALLY LIABLE FOR JEWELS HOME HEALTH CARE SERVICE'S MEDICAID OVERPAYMENT LIABILITY

42. Plaintiff incorporates and alleges Paragraphs 1 through 19 as though expressly re-stated herein.

10

43. Defendant Kellan Sandifer operated Jewels Home Health Care Service as a mere instrumentality, not as a separate entity, as evidenced by Kellan Sandifer's failure to keep Jewels Home Health Care Service's funds separate from Kellan Sandifer. (Ex F, Financial Statements.)

44. Kellan Sandifer repeatedly took funds from Jewels Home Health Care Service's account directly to pay for Kellan Sandifer's personal living expenses. He used the business funds to directly pay for multiple restaurants (Szechuan Gourmet, McDonald's, Starbucks, Tim Hortons, Little Caesars, Bucharest Grill, Chik-Fil-A, Smoothie King, Hunan Town), groceries and household items (Kroger, Meijer, Target, Costco, Home Depot, Nordstrom), pet care (Pet Smart), beauty products (Sephora), personal medical needs (Chiropractor), car payments, travel (Sprit Airlines, American Airlines), and online gambling (Bet MGM Online). (Ex F, Financial Statements.)

45. Defendants Kellan Sandifer operated Jewels Home Health Care Service as a mere instrumentality, not as a separate entity, as evidenced by the fact that few to no corporate or LLC formalities were followed in Jewels Home Health Care Service's operations.

46. Defendant Kellan Sandifer took distribution of funds from Jewels Home Health Care Service such that Jewels Home Health Care Service was unable to pay its debts as they became due, contributing to reducing its assets to be less than its liabilities. (Ex F, Financial Statements.) In fact, Jewels Home Health Care Service is now defunct and appears to lack any substantial assets at all.

11

47.     Defendant Kellan Sandifer knew, or should have known, that distribution of funds from Jewels Home Health Care Service would leave it unable to cover its debts as they became due.

48.     Defendant Kellan Sandifer, by treating Jewels Home Health Care Service as a mere instrumentality and then deliberately undercapitalizing it, caused a loss to Plaintiff, as Plaintiff was then unable to fully collect on Jewels Home Health Care Service's obligation to return the Medicaid overpayment of $82,846.41 as noted above.

49.     Defendant Kellan Sandifer, thus, by using Jewels Home Health Care Service as a mere instrumentality, defunding it below where it could pay its obligations, and then causing injury to Plaintiff, has met all the elements required to pierce the corporate veil, and thus hold Defendant Kellan Sandifer personally liable for Jewels Home Health Care Service's debts, and thus personally liable to repay Plaintiff the Medicaid overpayment of $82,846.41 noted above. *Florence Cement Co v Vettraino*, 292 Mich App 461, 469 (2011).

## COUNT V – DEFENDANTS' RETENTION OF THE MEDICAID OVERPAYMENT CONSTITUTES STATUTORY CONVERSION, AND THUS, TREBLE DAMAGES

50.     Plaintiff incorporates and alleges Paragraphs 1 through 19 as though expressly re-stated herein.

51.     After having been found to owe Plaintiff a Medicaid overpayment of $82,846.41 after an administrative hearing, as noted above, neither Defendant

12

Jewels Home Health Care Service nor Defendant Kellan Sandifer, as controllers of Jewels Home Health Care Service's assets, repaid Plaintiff for that overpayment.

52.     Defendant Jewels Home Health Care Service's failure to repay the overpayment to Plaintiff "constitute[s] a conversion of money" by Defendant Jewels Home Health Care Service. MCL 400.111b(16).

53.     To the extent that conversion was committed by Defendant Jewels Home Health Care Service, Defendant Kellan Sandifer may be held liable for their own torts, and to the extent that conversion was committed by Defendant Jewels Home Health Care Service, Defendant Kellan Sandifer may be held personally liable for their active participation in the same. *Citizens Ins Co v Delcamp Truck Ctr*, 178 Mich App 570, 574 (1989); see also *Bush v Hayes*, 286 Mich 546, 551 (1938).

54.     Defendant Jewels Home Health Care Service put the funds from the Medicaid overpayment of $82,846.41 to its own use, using it to pay its employees and expenses and use of its excess to give distributions to its owner.

55.     As owner of Defendant Jewels Home Health Care Service, Defendant Kellan Sandifer put the funds from the Medicaid overpayment of $82,846.41 to Kellan Sandifer's own use, using it to keep Defendant Kellan Sandifer's business afloat as well as give distributions of money to Defendant Kellan Sandifer.

56.     Where a defendant has committed conversion, plus has also put the converted property to its own use, the owner of the converted property is entitled to treble damages. MCL 600.2919a(1)(a). *Aroma Wines & Equip, Inc v Columbian Distribution Services, Inc*, 497 Mich 337, 340 (2015).

13

57.     The Defendants here committed conversion of the Medicaid overpayment of $82,846.41, per MCL 400.111b(16), and also used the converted funds for Defendants' own respective uses, and so therefore, Plaintiff is entitled to treble damages under MCL 600.2919a(1)(a), and so Plaintiff is entitled to $248,539.23.

Plaintiff respectfully requests that this Honorable Court enter judgment in Plaintiff's favor in the amount of $248,539.23.

## CONCLUSION AND RELIEF REQUESTED

Plaintiff respectfully requests that this Court enter a money judgment in favor of Plaintiff, against Defendants, jointly and severally, for damages in the amount of eighty-two thousand eight hundred forty-six and 41/100 U.S. Dollars ($82,846.41), and for treble damages according to MCL 600.2919a, in the amount of two hundred forty-eight thousand five hundred thirty-nine and 23/100 U.S. Dollars ($248,539.23), together with interest, costs, and such other relief as the Court deems appropriate.

<div style="margin-left:40%">

Respectfully submitted,

/s/ David H. Goodkin
David H. Goodkin (P69338)
Assistant Attorney General
Michigan Dep't of Attorney General
Revenue and Tax Division
Attorney for Plaintiff
P.O. Box 30754
Lansing, Michigan 48909
(517) 335-7584
GoodkinD@michigan.gov

</div>

Dated:  April 9, 2024